**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**STAIMAN BROTHERS, Respondent.**

**No. 71–2089.**

United States Court of Appeals, Third Circuit.

Argued June 15, 1972.

Decided Aug. 15, 1972.

William L. Corbett, Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C., Peter G. Nash, Gen. Counsel, Elliott Moore, Atty., N.L.R.B., for National Labor Relations Board.

William R. Tait, Jr., McNerney, Page, Vanderlin & Hall, O. William Vanderlin, Williamsport, Pa., for Staiman Brothers.

Before STALEY, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

This matter comes to us upon the application of the National Labor Relations Board for enforcement of its order against respondent, Staiman Brothers. Respondent has refused to bargain with a union certified by the Board in order to litigate objections to the representation election by which the union gained certification.

On January 29, 1970, the union [1] filed a petition seeking an election. In February of 1970, the Board's regional director approved an Agreement for Consent Election executed by Staiman Brothers and the union. The election was held on March 16, 1970. The tally of ballots showed that of 34 ballots cast, 17 were cast for and 17 against the union; one ballot was challenged.

The challenged ballot was cast by one Clifford Mitchelltree. Mitchelltree had been hospitalized on September 12, 1969, for 22 days and had not returned to work at the time of the election. Respondent had resisted the inclusion of his name on the list of employees eligible to vote but had agreed that he be permitted to vote subject to challenge.

The regional director conducted an administrative investigation regarding the challenged ballot and on April 10, 1970, issued his report. He directed that the challenge be overruled and that the ballot be opened and counted. The ballot was cast in favor of the union. Ten days later, on April 20, 1970, the regional director certified the union.

On April 22, 1970, the respondent filed with the regional director a motion to reconsider in which, for the first time, it was averred that Mitchelltree had filed for permanent and total disability benefits with the Social Security Administration. Respondent stated that this information was newly discovered and requested the director to declare Mitchelltree ineligible or, in the alternative, to reconsider his decision or order a hearing so that certain issues including Mitchelltree's application for permanent and total disability benefits and the statements accompanying that application might be developed. The regional director issued a supplemental report on May 8, 1970, denying respondent's motion.

Despite the regional director's certification of the union, respondent has refused to bargain collectively with it. The union filed a charge and a complaint was issued. The Board granted a motion for summary judgment in favor of the General Counsel and the Charging Party and against respondent. The Board ruled that respondent had agreed for purposes of the consent election to be bound by the regional director's determinations and concluded that those determinations had not been arbitrary or capricious.

On this appeal respondent argues that the regional director's determination that Mitchelltree was an employee of Staiman Brothers at the time of the election and eligible to vote was arbitrary and capricious. Further, respondent argues that the failure of the regional director to grant the evidentiary hearing requested in respondent's mo-

1. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 764.

tion to reconsider resulted in a denial of due process.

■ In Carlisle Paper Box Co. v. NLRB, 398 F.2d 1 (C.A.3, 1968), we held that an employer who executes a consent election agreement can complain of a regional director's determinations as to eligibility only to the extent that such determinations are arbitrary and capricious. The scope of our review is thus severely limited. It matters not that on the same evidence we might reach a decision contrary to that reached by the director, for "something more than error is necessary to spell out arbitrary or capricious actions." Carlisle Paper Box Co. v. NLRB, *supra* at 6.

· ■ Applying that standard to the instant case, the regional director's initial ruling on Mitchelltree's eligibility was clearly not arbitrary or capricious. The determination of Mitchelltree's eligibility was based primarily upon the fact that neither he nor the company had taken any formal or informal steps to terminate his employment, notwithstanding his absence from work. In addition, Staiman Brothers had continued to pay the premiums on Mitchelltree's medical disability insurance during his absence. He frequently visited respondent's premises, and about two weeks prior to the election he told his foreman that he did not know when he would return to work.

■ The customary procedure and policy of the Board on issues of eligibility is that in order to terminate an employment relationship, there must be a manifestation of the intent to terminate which is clearly communicated to the other party.[2] NLRB v. Pacific Gamble

Robinson Co., 438 F.2d 112 (C.A.9, 1971); Whiting Corp., 99 N.L.R.B. 117 (1952). While the respondent did assert that certain of its actions constituted a clearly communicated manifestation of its intent to terminate Mitchelltree, we cannot say that the regional director's contrary determination was arbitrary or capricious.

Respondent's second contention presents a far more difficult problem. The motion to reconsider filed by respondent averred as newly discovered evidence that Mitchelltree had applied to the Social Security Administration for total and permanent disability benefits. Based in part upon this evidence, respondent requested the director to declare Mitchelltree ineligible or, in the alternative, to reconsider his decision or order a hearing.

Without further investigation, the regional director dismissed this contention as meritless, stating that the Board had held Social Security annuitants to be eligible to vote in representation elections, citing Holiday Inns, 176 N.L.R.B. No. 124.

We view *Holiday Inns* as inapplicable to the instant case. The Board in *Holiday Inns* merely ruled that employees who are otherwise within the bargaining unit will not be found ineligible to vote in a representation election solely for the reason that they limit their working time and earnings so as not to decrease their Social Security annuity. The instant case involves the eligibility of one who is alleged to have applied for permanent and total disability benefits and would therefore be incapable of any employment, either within the bargaining unit or elsewhere.[3]

---

2. The rationale underlying the Board's policy is that it is impractical to inquire into the subjective intentions of employees. Election results would be held back by endless investigations into states of mind or of future prospects. See, e. g., Whiting Corp., 99 N.L.R.B. 117 (1952).

3. The distinction is especially apparent in view of the Social Security Administra-

tion standards for total disability benefits. An applicant has the burden of proving that he is unable to engage in any substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2) (A) (Supp. IV, 1965–1968). We have characterized this standard as imposing a "very harsh burden" upon the disability applicant. Woods v. Finch, 428 F.2d 469 (C.A.3, 1970).

In our view the regional director acted arbitrarily in refusing to order a hearing as requested by respondent. The outcome of the election turned on the vote cast by Mitchelltree. See NLRB v. Capital Bakers, Inc., 351 F.2d 45 (C.A.3, 1965). Respondent presented prima facie evidence of a substantial and material factual issue and requested a hearing in order to develop and resolve that issue. The Social Security Administration had initially denied respondent access to its records. It is clear, however, that had a hearing been held pursuant to respondent's request in its motion of April 22, 1970, respondent could have shown that Mitchelltree had been found to be totally and permanently disabled and therefore unable to engage in any gainful activity.[4] The record discloses that Mitchelltree had begun to receive benefits in April of 1970, prior to the regional director's denial, without investigation, of respondent's motion to reconsider.

In the unfair labor practice proceeding before the Board, respondent averred as newly discovered evidence the matter of Mitchelltree's disability application and the award of benefits to him. The Board ruled that those matters had been presented to the regional director and were considered and rejected by him. The Board ruled that under the terms of the Consent Election agreement, respondent had agreed to be bound by the regional director's determination. It concluded that those determinations had not been arbitrary or capricious and entered summary judgment against respondent.

At no stage of the proceedings, therefore, was a hearing afforded to respondent to properly challenge the eligibility of Mitchelltree in light of his total

disability status. It is implicit in a Consent Election agreement that the parties do not agree to be bound by arbitrary or capricious actions by the regional director and that any proceedings pursuant thereto will satisfy minimal due process standards. NLRB v. Capital Bakers, Inc., *supra*; NLRB v. W. R. Ames Co., 450 F.2d 1209 (C.A.9, 1971); NLRB v. Genesco, Inc., 406 F.2d 393 (C.A.5, 1969). We hold that it was arbitrary and capricious and a denial of due process to refuse respondent an opportunity to pursue and properly develop the matter of Mitchelltree's disability application, especially in view of the critical nature of his vote.

The petition of the Board for enforcement will be denied.

---

4. It was not until a complaint issued on August 25, 1970, giving rise to subpoena power that respondent had an opportunity to pursue the matter with the Social Security Administration. That agency's records reveal that Mitchelltree applied for total and permanent disability benefits on October 6, 1969, five months prior to the election. In his application, Mitchelltree avers that his work at Staiman Brothers ended in September of 1969. He was determined to be totally and permanently disabled by that agency and began receiving benefits effective April of 1970, one month prior to the regional director's supplemental report, filed on May 8, 1970, which denied respondent's motion for reconsideration or hearing.