**Anthony GOBER, Appellant,**
**v.**

**David MATTHEWS, as Secretary of Health, Education and Welfare.**

**No. 77–1499.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1978.

Decided March 17, 1978.

Nicholas Panco, Saint Clair, Anthony J. Miernicki, Shenandoah, Pa., for appellant.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., William J. McGettigan, Asst. U. S. Attys., Philadelphia, Pa., for appellee; Stephanie W. Naidoff, Regional Atty., Fred J. Marinucci, Asst. Regional Atty., Roberta Hess, Legal Asst., Dept. of Health, Ed. and Welfare, Philadelphia, Pa., of counsel.

Before ADAMS, BIGGS and WEIS, Circuit Judges.

### OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal challenges the failure to award black lung benefits to a sixty-five year old former coal miner. Because it is not clear whether the administrative law judge properly based his decision on substantial evidence, we remand the case for a redetermination regarding eligibility.

#### A.

Anthony Gober, born on December 3, 1912, began work in a coal mine in 1928. From that time until 1955, except for twenty-two months of military service, he was employed as a miner. In 1955, Gober began work with the Aluminum Company of America as a press helper. He testified that one of the reasons he left the mines was that he experienced difficulty in breathing.

In April 1972, Gober was hospitalized with a myocardial infarction and, on physi-

cians' orders, did not return to work. Based on an application filed in August of 1972, Gober was awarded Social Security disability benefits in January of 1973 for his heart condition.

Also, in August of 1972, Gober filed a claim for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969,[1] alleging that he was disabled because of pneumoconiosis. His application was subsequently supported by the opinion of Dr. William Dzurek, his physician. On May 10, 1973, Gober's claim was denied by the Secretary of Health, Education and Welfare. Six days later, a workman's compensation referee of the Commonwealth of Pennsylvania adjudicated Gober totally and permanently disabled because of anthracosilicosis resulting from his prior employment in coal mines.

On December 17, 1975, after a hearing, an administrative law judge assigned to the Department of Health, Education and Welfare, affirmed the denial of Gober's claim, stating that Gober's disability did not arise from pulmonary difficulties, but from heart disease. The decision by the administrative law judge was upheld, successively, by the Appeals Council and by the District Court for the Eastern District of Pennsylvania. An appeal from the affirmance by the district court is before us.

### B.

Under the Black Lung Benefits Act of 1972,[2] benefits are to be available to miners who are totally disabled by pneumoconiosis or an associated lung disease. Such benefits may be attained, under current regulations, in one of three ways. The first, and most direct of these routes, allows a claimant to prove his entitlement by:

(a) submitting X-rays which can be diagnosed as disclosing complicated pneumoconiosis,[3] a totally disabling disease; or

(b) submitting X-rays which "establish" the existence of pneumoconiosis,[4] which, if the claim was originally asserted before July 1, 1973, raises the rebuttable presumption that the miner was totally disabled due to pneumoconiosis.[5]

The second option, if a claimant has worked for more than fifteen years in coal mines and has filed his claim by July 1, 1973, is to establish the existence of a "totally disabling respiratory disease" by way of ventilatory studies.[6] If the "forced expiration volume" (FEV) and "maximum voluntary ventilation" (MVV) values fall below standards stated in the regulations, the miner is presumed to be totally disabled and therefore entitled to benefits, if the presumption is not rebutted.

A third possibility, if the ventilatory test results are not sufficiently low and X-rays are negative, permits a miner who has worked fifteen years in the mines to "nevertheless" establish entitlement to benefits[7] by proving the existence of a "totally disabling chronic respiratory ailment" presumed to be pneumoconiosis.[8] Such proof may be adduced by the submission of "other relevant evidence," "establishing" that the claimant was subject to a chronic respiratory or pulmonary ailment, the severity of which prevented him from engaging in gainful employment comparable to that which he performed in the mines.[9] Upon such a showing, the miner is presumed to be totally disabled because of pneumoconiosis,

---

1. 30 U.S.C. §§ 921–925.

2. That Act amended the Federal Coal Mine Health and Safety Act of 1969, *supra* to make qualification for benefits easier.

3. 20 C.F.R. § 410.418. A subsidiary alternative under this regulation is to submit a lung biopsy or autopsy showing pneumoconiosis.

4. 20 C.F.R. § 410.428.

5. 20 C.F.R. § 410.490(b).

6. 20 C.F.R. § 410.490.

7. 20 C.F.R. § 410.490(e).

8. 20 C.F.R. § 410.414(b)(1).

9. 20 C.F.R. § 410.426(d). The lung ailment, however, must be the "primary" reason for the disability. § 410.426(a).

a presumption which may be rebutted only by a demonstration that the miner does not have pneumoconiosis.[10]

Gober sought to utilize each of the three courses prescribed by the regulations.

## C.

■ Although Gober submitted six X-rays which were construed to indicate pneumoconiosis, the administrative law judge chose to credit other readings of five of those films that indicated no pneumoconiosis. We have some reservations regarding the administrative law judge's decision to credit equivocal negative readings by Dr. Milton Friedlander instead of emphatic positive readings by Dr. Dzurek of X-rays taken by Dr. Dzurek in May 1973, and regarding the rejection of uncontradicted positive readings by Dr. Dzurek in August 1975. These reservations are augmented by our puzzlement at the reference by the administrative law judge to only "five X-rays" contained in the record [11] when actually six were entered into evidence. Nonetheless, we cannot overturn as unsupported by substantial evidence the determination by the administrative law judge that the X-rays failed to "establish" pneumoconiosis.[12]

■ Similarly, Gober submitted three successive ventilatory studies that yielded progressively lower results. The first study contained readings that were close to the values from which disability could be presumed; the second two were substantially below such values.[13] The administrative law judge chose to credit the first ventilatory study, but to reject the other two, on the

ground that the latter studies employed a "poor or unacceptable technique" in that they failed to comply with the procedures required by regulations. Again, we cannot say that the administrative law judge's decision was not within his discretion, or was unsupported by substantial evidence.

■ Gober also attempted to utilize the third route to benefits by tendering "other relevant evidence" to demonstrate that he was totally disabled as a result of a respiratory disease. Given his twenty-five years of work in coal mines, such a demonstration would have entitled him to a presumption that he qualified for benefits. Gober testified that he was chronically short of breath, subject to extended coughing spells, experienced severe chest congestion, had difficulty walking up grades or steps, and expectorated "dark grey" phlegm. He stated that he was unable to engage in activities such as repairing automobiles or gardening, which he formerly enjoyed. Gober also commented that he was unable to work after his heart attack "because of his lungs." Significantly, all of this evidence by Gober was unrebutted.

Counsel for Gober presented the testimony of Dr. Dzurek, a physician specializing in lung diseases of miners, who had examined Gober in May 1973, and August 1975. Dr. Dzurek stated that on both occasions, based on X-rays, ventilatory function studies, vital capacity studies and clinical observations, he had concluded that Gober suffered from pneumoconiosis and emphysema, and consequently was totally disabled. As a result of his clinical evaluation, Dr. Dzurek

---

**10.** 20 C.F.R. § 410.414(b)(2). The miner may also establish such a presumption by demonstrating certain physiological symptoms not here at issue (§ 410.424) or meeting certain ventilatory test values more stringent than those discussed above (§ 410.426(b)).

**11.** Tr. 10.

**12.** Our review is limited to determining whether the decision before us is supported by substantial evidence on the record taken as a whole and is not arbitrary, capricious or contrary to law. 30 U.S.C. § 923(b); 42 U.S.C. § 405(g). The Secretary's practice of having positive X-rays reread by highly qualified "B"·

readers, and treating such rereading as final appears to be supported by the regulation applicable to compulsory health surveys under Title II of the 1969 Act (30 U.S.C. § 841 et seq.). See 42 C.F.R. § 37.51, § 37.52.

**13.** The studies listed Gober's height as 70". As such, values of FEV less than 2.5 and MVV less than 100 were required to qualify for a presumption of disability. § 410.490(b)(ii). Gober's tests were as follows:

| | January 1973 | February 1974 | August 1975 |
|---|---|---|---|
| FEV | 2.47 L | 2.05 L | 1.1 L |
| MVV | 125 L/M | 96 L/M | 59.8 L/M |

also testified that Gober had fully recovered from his earlier heart attack. Under questioning by the administrative law judge, Dr. Dzurek reiterated this last opinion and stated that he predicated it on blood-pressure readings before and after exercise by Gober which indicated a "well-functioning heart," as well as a general clinical examination.

The administrative law judge concluded that, while "some degree of lung disfunction is clearly evidenced," Gober's disability was attributable to his heart condition, and therefore not compensable under the Act. We have grave doubts whether such resolution of Gober's application was properly supported by substantial evidence.

### D.

Our task in reviewing the administrative law judge's determination is made more difficult by the fact that he did not follow the format which we suggested in *Baerga v. Richardson.*[14] Nonetheless, as the Fourth Circuit has noted, "unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"[15] We must therefore explore the somewhat discursive opinion of the administrative law judge to ascertain his reasons for rejecting the conclusion of Dr. Dzurek, the sole examining physician to testify.

1. The first evaluation of evidence, on page 3 of the administrative law judge's

opinion,[16] stresses a letter of Dr. Leo Corazza, who examined Gober in December of 1972. The letter stated that Gober was hospitalized in 1972 with heart disease, and that such disease continued. The administrative law judge also referred to the Health, Education and Welfare determination in January of 1973 that Gober was entitled to Social Security disability benefits on the basis of "arteriosclerotic heart disease, myocardial infarction and coronary insufficiency." These, the administrative law judge seemed to suggest, should be entitled to greater weight than the testimony of Gober and his physician, Dr. Dzurek, that the claimant was disabled because of pneumoconiosis.

There are several difficulties with this analysis. First, 20 C.F.R. § 410.470 explicitly declares that decisions regarding eligibility for Social Security disability benefits are not to be determinative in black lung proceedings. Second, it is unclear whether the administrative law judge's erroneous attribution of the Social Security finding to a "judicial determination" indicates that a mistaken degree of credence was given to that piece of evidence. Third, the administrative law judge did not consider the fact that the Pennsylvania Unemployment Compensation Referee had ascertained that Gober was totally disabled because of anthracosilicosis.[17] Nonetheless, if the reasons thus far articulated had been the only evaluation of the evidence, it might have been sufficient to require affirmance. Three pages later, however, the administrative law judge returned to his analysis of the cause of Gober's disability.

2. In the later discussion, the administrative law judge first discounted Dr. Dzu-

14. 500 F.2d 309 (3d Cir. 1974). *Baerga* suggested that "in our view an examiner's findings should be as comprehensive and analytical as possible, and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based." 500 F.2d at 312. *See id.* at 311 n. 2 ("A directive to make findings of fact normally means clear and explicit findings of all facts necessary to support the conclusions reached.").

15. *Arnold v. Secretary of HEW,* 567 F.2d 258, at 259 (4th Cir. 1977).

16. Tr. 9.

17. We do not suggest that, in general, state unemployment compensation decisions should be decisive. However, in this case, where the administrative law judge chose to rely on a non-binding Social Security determination, it would appear that fairness might also indicate that he should have taken cognizance of a parallel state adjudication which benefited the miner.

rek's testimony on the ground that "the exaggerations of that physician gives [sic] little credibility to the findings he reports."[18] It is unclear to what "exaggerations" the administrative law judge referred. The only prior discussion regarding Dr. Dzurek's testimony was the administrative law judge's rejection of that physician's reading of Gober's chest X-ray. It does not seem appropriate for an administrative law judge to discredit medical testimony entirely because such testimony is on the less persuasive side of a difference of medical opinion regarding a previous issue. We are left with the impression that the testimony of Dr. Dzurek was rejected because it represented an "exaggeration" only as compared with the administrative law judge's own conclusions.

■ Such an evaluation would be improper. While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him. In this respect, we note the following observation by the Supreme Court:

> [T]he decision whether to continue disability benefits will turn, in most cases, upon "routine, standard, and unbiased medical reports by physician specialists," *Richardson v. Perales*, 402 U.S. [389] 404, [91 S.Ct. 1420, at 1428, 28 L.Ed.2d 842], concerning a subject whom they have personally examined. In *Richardson* the Court . . . emphasiz[ed] that while there may be "professional disagreement with the medical conclusions," the "specter of questionable credibility and veracity is not present."[19]

■ 3. After discounting Dr. Dzurek's testimony, the administrative law judge commented that Gober's lung disfunction was "based in part upon emphysema," and "may or may not be due to the fact that he smoked one pack of cigarettes daily for forty years."[20] It is of questionable propriety in any event for the administrative law judge to speculate on the source of lung disability when no medical evidence was submitted to support such hypothesis. And it is unacceptable for such speculations to influence the outcome of the case, especially when they contradict the intentions of Congress. 30 U.S.C. § 921(c)(4) was specifically amended to state:

> If a miner was employed for fifteen years or more in one or more underground coal mines . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis.[21]

The speculation by the administrative law judge that Gober's lung disorder might have been caused by smoking is at odds with the expressed Congressional presumption.

4. Finally, the administrative law judge declared that "It would be highly unlikely for total disability to exist where stated ventilatory values exceed the interim values:"[22] This assertion is unsupported by the record. And perhaps even more important, the use of this statement to defeat Gober's claim is inconsistent with the intent of Congress in amending the Act in 1972.

The 1972 Amendments, according to the Senate Committee Report, were brought about because of the high rate at which

---

18. Tr. 12.

19. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

20. Tr. 12.

21. *See* 20 C.F.R. § 410.414(b)(1) and § 410.426(d). Sen.Rep. 92–743, 92d Cong. 1st Sess. (1972) *reprinted* 1972 U.S.Code Cong. and Admin.News, pp. 2305, 2314. ("While the exact causes of these conditions are not completely understood and while other nonoccupational factors may be in part responsible, no medical authority can prove these conditions to be unassociated with mining exposure.") Separate views of Sen. Javits and Sen. Taft: ("Benefits will be extended to those miners whose respiratory difficulty can reasonably be assumed to have been caused or aggravated by their employment in coal mines").

22. Tr. 13.

claims for black lung benefits were being denied. The Report stated: "[I]t has become glaringly apparent that the Act is not benefiting many of the nation's disabled coal miners who Congress intended to benefit." [23] One of the reasons for this undesirable failure to grant benefits was that "the simple breathing test, which measures only ventilatory capacity, may not adequately detect disabling respiratory or pulmonary impairment." [24]

Thus, the legislative history contemplated that "interim rules and criteria shall . . provide for the adjudication of claim [sic] on the basis of medical evidence other than breathing tests." [25] If a failure to qualify for benefits on the basis of ventilatory studies raised the inference that it was "highly unlikely" that the miner was disabled, the Congressional mandate would be slighted. Such an inference would, moreover, be at variance with the Congressional announcement that:

> The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve upon the 1969 provisions so that the cases which should be compensated will be compensated. In the absence of definitive medical conclusions, there is a clear need to resolve doubts in favor of the disabled miner or his survivors.[26]

We therefore join the Sixth, Seventh and Eighth Circuits in concluding, at least where there is medical testimony that a disabling respiratory disease is present, that under the 1972 Amendments the Secretary may not infer merely from a failure to submit qualifying X-rays and ventilatory studies that a miner is unlikely to be totally disabled because of respiratory or pulmonary disease.[27]

**23.** Sen.Rep. *supra* note 20 at 2312. *See id.* at 2307, 2313.

**24.** *Id.* at 2313 *see id.* at 2322 (ventilatory studies do not measure "breathing impairment may also result from reduction in an individual's capacity to transfer oxygen from his lungs into his blood stream . . . ").

**25.** *Id.* at 2322 (Where it is not feasible or practicable to provide physical performance tests of the type described in the above cited section.) No such tests were given or offered to Mr. Gober.

**E.**

Since, from the record before us, we cannot determine whether or not the errors in the administrative law judge's opinion noted above infected his conclusion that Gober was not entitled to benefits, the case will be remanded for a new hearing, consonant with this opinion, regarding Gober's eligibility.

**26.** *Id.* at 2315.

**27.** *See Prokes v. Mathews*, 559 F.2d 1057, 1059–62 (6th Cir. 1977); *Bozwich v. Mathews*, 558 F.2d 475, 479–480 (8th Cir. 1977); *Morris v. Mathews*, 557 F.2d 563, 566–70 (6th Cir. 1977); *Ansel v. Weinberger*, 529 F.2d 304, 310 (6th Cir. 1976); *Henson v. Weinberger*, 548 F.2d 695, 698–699 (7th Cir. 1977). We have found no cases from any other circuits which take issue with this conclusion.