**Mary Ellen WOLFE, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 78–1001–N.**

United States District Court,
W. D. Pennsylvania.

March 15, 1979.

Smorto & Persio, Ebensburg, Pa., for plaintiff.

Stephen I. Goldring, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate.

### I. *Recommendation*

It is respectfully recommended that the defendant's motion for summary judgment be denied, and that the decision of the Secretary of Health, Education and Welfare be reversed.

### II. *Report*

Presently before the Court for disposition is the defendant's motion for summary judgment.

On September 7, 1978, Mary Ellen Wolfe, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) for review of the Secretary's final determination disallowing her claim for child's disability insurance benefits under Section 202(d) of the Act, 42 U.S.C. § 402(d).

On April 28, 1976, the plaintiff filed an application for child's insurance benefits due to the loss of an eye and glaucoma since July 12, 1951 (R. 93–94). In a decision dated March 15, 1977 benefits were denied (R. 96), and on March 16, 1977, the plaintiff requested reconsideration of this determination (R.97). Upon reconsideration, and in a decision dated November 16, 1977, benefits were again denied (R. 100–101). On December 14, 1977, a request for a hearing was made (R. 102) and pursuant to that request a hearing was held on May 11, 1978 (R. 17–92). In a decision dated June 9, 1978, benefits were denied (R. 6–11), and on June 15, 1978, the plaintiff requested reconsideration of this determination (R. 4–5). In a decision filed on July 7, 1978, the Appeals Council affirmed the prior determination (R. 3). The instant complaint was filed on September 7, 1978.

In reviewing an administrative determination of the Secretary, the question before any court is whether there is substantial evidence in the agency record to support the finding of the Secretary that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978); *Chicager v. Califano*, 574 F.2d 161 (3d Cir. 1978).

It is provided in 42 U.S.C. Section 405(g) that:

> "The Court shall have power to enter upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."

Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)," *Richardson v. Perales, supra*, 402 U.S. at page 401, 91 S.Ct. at 1427; *Winfield v. Mathews*, 571 F.2d 164 (3d Cir. 1978).

It is provided in Section 202(d)(1) of the Act, 42 U.S.C. § 402(d)(1) that:

> "Every child . . . of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child . . . (B) at the time such application was filed was unmarried . . . or is under a disability . . . which began before he attained the age of 22 . . . shall be entitled to benefits . . . "

Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental im-

pairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ”

At the hearing held on May 11, 1978 (R. 17–92), the plaintiff appeared with counsel (R. 19) and testified that she was born on July 12, 1951 (R. 22); that she is single (R. 22), and that she completed high school including two years training in typing and bookkeeping (R. 24–28). In addition, the plaintiff worked for less than two weeks as a dentist's receptionist, but had to stop because of eye problems (R. 30–36).

The plaintiff also testified that she can do housework and cooking although she must stop and rest often and receives help from relatives (R. 37–38, 49, 52, 62); that she can see with her right eye but it rapidly becomes blurry and painful (R. 41–42); that she can drive up to ten minutes (R. 44); that she does not read or watch television to any extent (R. 53); that she sees her doctor every six months (R. 53); that he advised resting to stop the pain (R. 42); that she has had these difficulties since age eight (R. 55), and that the condition has worsened (R. 63).

Thomas Wolfe, the plaintiff's brother (R. 67) testified that he would corroborate the plaintiff's testimony concerning her eye problem (R. 67); that she does not participate in anything and bumps into things (R. 68); that she always covers her eye because it gets tired (R. 69); that her discomfort is evident (R. 70), and that her condition has worsened (R. 70, 71, 72).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the finding of the Secretary that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Sections 423(d)(1)(A) as:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ”

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

"an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. *NLRB v. Staiman Brothers*, 466 F.2d 564 (3d Cir. 1972); *Choratch v. Finch*, 438 F.2d 342 (3d Cir. 1971); *Woods v. Finch*, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Secretary that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Secretary.

In an undated statement, Dr. Harold G. Scheie stated:

"This is to certify that Miss Mary Ellen Wolfe has been followed in this office

since July 28, 1959 with a diagnosis of congenital glaucoma and Axenfeld's syndrome. Her visual acuity when first seen was 20/70 in the right eye, and Hand Movements in the left. On August 7, 1962, surgery, peripheral iridectomy with scleral cautery was performed on the right eye. Her left eye was beyond redemption, and was enucleated in 1975 elsewhere.

"When last seen on September 10, 1975 visual acuity in the right eye with correction was 20/30. Although the vision was good, this eye has always been markedly abnormal with congenital defects which represent a cleavage syndrome with severe glaucoma. It cannot be considered a normal eye." (R. 127).

Dr. Scheie specializes in ophthalmology (R. 128).

In a report covering the period from December 1963 through February 24, 1976, Dr. Charles Hunsberger reported that the plaintiff had an enucleated left eye and myopia in the right eye; that she suffered from congenital glaucoma with a tonometer measurement of 4/5.5; that the vision in her right eye is 20/30 +, and that the funduscopic findings were negative (R. 115). Dr. Hunsberger specializes in ophthalmology (R. 122).

After reviewing the record and in a report dated June 2, 1976 the disability reviewing physician stated:

"The claimant suffers from congenital glaucoma. However, medical evidence indicates that her central visual acuity in the right eye is 20/30 +. She is blind in the left eye. There is no indication of a limited visual field in her right eye. Accordingly, it is determined that she can perform gainful activity that does not require depth perception." (R. 95).

In a letter dated May 3, 1977, Dr. Hunsberger diagnosed congenital glaucoma on both eyes; enucleation of the left eye secondary to glaucoma; anterior cleavage syndrome in the right eye with iris process adhering to the cornea, and keratosis, secondary to iris adhesions. He concluded,

"This patient is able to function in a limited capacity as a homemaker and is able to perform only limited amounts of driving activity restricted to short distance driving in the day light only and in ideal weather conditions.

"It would appear to me that the patient is not capable of holding full or part-time employment in the work-a-day world and in that sense is completely disabled." (R. 117).

In a report covering the period from December 28, 1963 through April 28, 1977, Dr. Hunsberger diagnosed congenital glaucoma, enucleation of left eye secondary to glaucoma, controlled anterior cleavage syndrome in the right eye with iris processes adhering to the cornea, and keratosis secondary to iris adhesions. Vision in the right eye was 20/25 + 2 and the funduscope readings were negative (R. 118).

After reviewing the record and in a report dated November 15, 1977, the disability reviewing physician stated:

"The claimant has had surgical enucleation of the left eye due to glaucoma. Her right eye however has a central visual acuity of 20/25 + 2 with correction. She also has anterior cleavage syndrome and keratosis which is controlled. No visual field deficiency is reported. Accordingly, medical evidence indicates that the claimant retained the residual functional capacity to engage in a wide range of occupations not requiring particularly good vision. . . . " (R. 98–99).

On December 5, 1977, Dr. Hunsberger updated his report of May 3, 1977 and stated:

" . . . this patient's function visually is markedly limited due to the fact that she has only one eye and this is markedly diseased from congenital glaucoma and progressive anterior cleavage syndrome producing scarring and opacity of the cornea. This in turn produces difficulty in vision, sensitivity to light, and visual impairment.

"I would like to point out that this patient was born with these eye problems and that means that the visual difficulty

and eye impairments existed before the age of 22 . . .

" . . . this patient's visual difficulties began at the age of birth and has the continued problem to the present, resulting in the loss of one eye completely being replaced with a false eye and the remaining eye has severe visual impairment and has had several bouts of surgery prior to this time. The outlook or prognosis is guarded and the patient's visual disability is acknowledged." (R. 120–121)

■ A medical opinion that a claimant is, or is not disabled within the meaning of the Social Security Act is not binding upon the Secretary. It is provided in 20 C.F.R. § 404.1526 that:

"A statement by a physician that an individual is, or is not, 'disabled,' 'permanently disabled,' 'totally disabled,' . . . or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability."

■ The resolution of conflicting medical evidence and the determination of credibility rests with the Secretary. *Gober v. Mathews*, 574 F.2d 772 (3d Cir. 1978). In a similar manner the award of benefits by another agency is not binding on the Secretary. *Small v. Califano*, 565 F.2d 797 (1st Cir. 1977).

At the hearing held on May 11, 1978, Morton M. Morris was called upon to testify as a vocational expert (R. 73–90).[1]

Dr. Morris was first asked to,

"Assume the claimant has all limitations, restrictions and the pain as alleged in her testimony, would she be able to perform her previous job of receptionist in that dentist's office?" (R. 77).

To this inquiry, the vocational expert replied negatively (R. 77).

The next inquiry was:

"Assuming the claimant has the limitation, restriction and pain as alleged in her testimony and considering her age, education, training, and past work experience, would she be able to perform any other job existing in the national economy?" (R. 77).

To this inquiry, Dr. Morton again responded negatively (R. 77).

The next inquiry was,

"Assuming . . . that I find from all the evidence, including medical, that there is no physical impediment, the claimant's performing what you defined as sedentary work, whether any jobs that you know in the national economy which she can perform considering her age, education, training, background in itself, identified jobs, how many and where they're located." (R. 77–78).

That is, it was assumed there were no physical impediments present (R. 78). Based on this assumption, Dr. Morris answered affirmatively and cited positions as packager, telephone operator, gluer, ticketer, bottling line attendant, receptionist and garment folder which positions are available in the plaintiff's general geographic area (R. 78–80). However, if she had to lie down periodically, it would be difficult for her to maintain these positions (R. 83, 84).

When asked to assume, with respect to the jobs reported that,

"the claimant has no left eye, further claimant's visual . . . in the right eye is 20/25, 20/25, that further assume that she has occasional discomfort and pain of the right eye, could she still perform those jobs?" (R. 90).

To this inquiry, the response was affirmative (R. 90).

■ In addition to reviewing the medical evidence, the Secretary must consider subjective symptoms. *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974). As the court stated in *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971):

"Symptoms which are real to the claimant although unaccompanied by objective medical data may support a claim for disability benefits, providing of course, the claimant satisfies the requisite burden of proof."

---

1. Dr. Morris' qualifications as a vocational expert appear at R. 123–124.

In *Good v. Weinberger*, 389 F.Supp. 350, 353 (W.D.Pa.1975) the Court stated:

" . . . *Bittel* seeks to help those claimants with cases that so often fall within the spirit—but not the letter—of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question."

Based on the evidence presented, the Secretary concluded:

"The evidence shows that although claimant has had surgical enucleation of the left eye due to glaucoma, her right eye has a central visual acuity of 20/25 + 2 with correction, anterior cleavage syndrome and keratosis is controlled and there is no evidence of visual field deficiency. While claimant may have some pain, she takes no medication and she only uses Visine drops for soreness and redness. The pain is not of such severity as to be disabling.

"In view of the entire evidence of record, the Administrative Law Judge concludes that claimant was not disabled by any impairment before attaining age 22 which would prevent any substantial gainful activity for at least 12 consecutive months thereafter. Accordingly, the claimant is not disabled within the meaning of the Social Security Act, as amended." (R. 10)

The uncontradicted medical evidence reveals that the plaintiff had one eye surgically removed, and that while her other eye has been corrected to 20/30 vision, she suffers from congenital glaucoma and her remaining eye does not function as a "normal" eye but rather has severe visual impairment. The plaintiff testified that while she has vision in the right eye, that eye rapidly tires upon use, and that she must rest her remaining eye frequently. In addition, it was only when the totally medically supportable symptoms were hypothecated away, that the vocational expert was able to conclude that there existed substantial gainful employment which the plaintiff could perform. However, if the plaintiff was required to rest frequently, he concluded that even these limited jobs would be unavailable to her. Thus, it would appear that only when the expert witness was directed to ignore the plaintiff's symptoms that he could enumerate jobs which she could perform. Since these symptoms are medically supported, it is improper to disregard them. *Glass v. Secretary*, 517 F.2d 224 (6th Cir. 1975). In addition, even if the plaintiff were employable, the reasonably contemplated inadequacy of her performance cannot be disregarded. *Chicager v. Califano, supra.*

Summary judgment is appropriate only when there are no disputed material issues of fact. *Rosenthal v. Rizzo*, 555 F.2d 390 (3d Cir. 1977); *Costlow v. United States*, 552 F.2d 560 (3d Cir. 1977).

Accordingly, because there do not exist any material issues of fact, and because substantial evidence does not exist to support the decision of the Secretary, it is respectfully recommended that the decision of the Secretary of Health, Education and Welfare denying disability benefits be reversed.

## MEMORANDUM

ROSENBERG, District Judge.

Here is an unusual situation of a young person who is not readily classified as either blind or sighted, but suffers from handicaps of a blind person without being totally blind. That she has some limited ability to see is unquestionably indicated by the evidence as a whole, yet it would appear that her severely restricted or defective eyesight is more of a hindrance to her than an aid. That is so because while she may commence activities of minor kinds, including driving a car a very short distance, she is very quickly deprived of the competence necessary to sustain visibility.

Unquestionably, such a person will not be hired as a seeing person in any employment where continuous visual capability is a requirement. I can conceive of no employment where such a person would be hired or patiently endured as an employee. I am sure that the Administrative Law Judge

would have arrived at this same conclusion if not for his reliance on a misstatement of the facts in his hypothesis requiring an assumption that she did not suffer from these physical conditions. It was only on this assumption that the vocational expert could have considered her gainfully employable.

Thus, as the Magistrate concluded, substantial evidence to support the decision of the Secretary does not exist in the record since the determination was made upon an application of the law to unsupportable hypothetical circumstances rather than to actual circumstances. This is a frustration of the intent of Congress as gleaned from the Congressional reports.

Under the circumstances, the Report and Recommendation of the Magistrate will be adopted as the Opinion of this Court as though set forth at length, and the decision of the Secretary of Health, Education and Welfare will be reversed.