**Lawrence DRAGUN, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Department of Health and Human Services, Defendant.**

**Civ. A. No. 83–1341.**

United States District Court, W.D. Pennsylvania.

Jan. 30, 1985.

J. Alan Johnson, U.S. Atty., for defendant.

Samuel S. Blaufeld, Pittsburgh, Pa., for plaintiff.

ROSENBERG, District Judge.

This supplements the opinion of the United States Magistrate in the above entitled case.

The evidence in the case on the part of the medical experts is contradictory; the decision of the administrative law judge should determine the credibility of these expert opponents.

The plaintiff testified before the administrative law judge that he was 61 years of age and was injured on May 2, 1980 when he was struck by a beam; that he had pain in the back of his head where he was struck and becomes lightheaded several times during the week; that he has lost interest and is unable to concentrate; that he does not wish to associate with anyone; that he has memory problems and that he takes medication.

The plaintiff's wife testified that he was unable to perform household repairs; that he had become short tempered and sometimes stayed in his room when there were visitors.

Medical testimony was to the effect that he was treated at St. Margaret Memorial Hospital emergency room after a shelf hit him on the head; that he was treated after he had passed out; that he had had a CAT scan which was normal, and at the Harmarville Rehabilitation Center the neurological tests and examination were negative and it was determined he could return to work.

Dr. Allen E. Lebovitz, a psychiatrist, certified he was unable to work because of depression. Dr. David L. Spence reported that the diagnosis was post traumatic neurosis directly attributable to the plaintiff's accident and that the plaintiff's overall mood was one of depression with associated agitation and high anxiety level. Dr. R.J. Bender, a family physician, stated the plaintiff was unable to work due to headaches, dizziness and vertigo. Dr. Lebovitz's diagnosis was depressive reaction and concluded that the plaintiff was totally incapacitated. Dr. Robert Baraff, a psychiatrist and neurologist, reported a normal neurological examination and that the plaintiff suffered from a cerebral concussion, vasovagal syncope, depression and chronic headaches. It was noted that the examination of the skull-X-ray, brain scan, electroencephalogram and back X-rays

were normal. No aphasia, dysarthria or dementia were noted by the Secretary, and his daily activities, interests and ability to relate were not constricted.

The Secretary said, "The severity of these impairments does not meet or equal a listing in the listing of impairments." The Secretary further noted, "Claimant retains the functional capacity for a limited range of light work."

■ Where there are contradictions between medical experts, it would seem that the evidence of the plaintiff should be considered by the administrative law judge with great discernment. The plaintiff's evidence should be considered with neutrality but with judicial concern for the plaintiff's capability of performing gainful employment.

In the Secretary's conclusion she said, "... the claimant by virtue of his symptomatology does show evidence of a conversion hysteria reaction, in particular in relation to his fears of significant climbing and fear of falling off a crane or cranes ...". She, nevertheless, accepts the evidence of the Board-Certified Neurologist and Psychiatrist, Dr. Baraff that "the claimant's conditions are essentially normal". She further recognized that the claimant "has been complaining of dizzy spells and of chronic headaches and depression and of upper back and neck pains ...".

She also finds that "Social Security disability purposes warrants a finding within the framework of Section 404.1520(c) that the claimant is not suffering from a sufficiently severe physical, neurological or mental status impairment so as to significantly limit his physical or mental ability to do basic work activities". On this basis the Secretary affirms the finding of the administrative law judge and the Appeals Council.

■ In the Report and Recommendation of the Magistrate that this matter be referred back to the Secretary for "further evaluation and consideration", it would seem that the Secretary should recognize

the fact that the disease, from which she admits the claimant suffers, is depression.

Webster's Third New International Dictionary, Unabridged, 1971, at page 606, defines the disease of depression of a human being as: "(4) a mental disorder of psychoneurotic or psychotic proportions characterized by sadness, retardation of motor and certain vegetative processes, feelings of inadequacy and self-depreciation and often by suicidal attempts".

Because the claimant's doctors asserted under oath that his condition was of such a character as to prevent him from performing gainful employment, the claimant's complaint should be more thoroughly researched in order to determine the kind and character of depression from which the claimant suffers and what there is that would prevent him from performing any kind of gainful employment.

■ While conflicting medical evidence and credibility of the experts rests with the Secretary, *Gober v. Matthews*, 574 F.2d 772, C.A.3, 1978, this of necessity in large measure must be resolved by subjective evidence, *Baerga v. Richardson*, 500 F.2d 309, C.A.3, 1974.

In The Merck Manual, Fourteenth Edition (1982), at page 1448, Chapter 146, Affective Disorders, there is a long and thorough discussion of psychiatric conditions "in which a disturbance of affect or mood is either a primary determinant of the psychopathologic state or constitutes its core manifestations".

This is not a matter in which a layman can have understanding or make instantaneous conclusions from the testimony of an expert in this field. As for instance, when a person takes alcohol and sedatives in a sufficient amount, it may debilitate that person and make that person incapable of performing any kind of employment. Likewise, it may be that this mental disease of depression may be of such a character as to incapacitate a person not only in varying degrees but totally, and that is a matter which should be set to rest by experts, and

from the testimony of the one afflicted by the disease.

It is, therefore, for this reason that I accept the determination of the Magistrate to remand the matter to the Secretary for further inquiry, evaluation and consideration.

## MAGISTRATE'S REPORT AND RECOMMENDATION

January 8, 1985

ROBERT C. MITCHELL, United States Magistrate.

### I. *Recommendation*

It is respectfully recommended that the defendant's motion for summary judgment be denied, without prejudice, and that the matter be remanded to the Secretary of Health and Human Services for further evaluation and consideration.

### II. *Report*

Presently before the Court for disposition is the defendant's motion for summary judgment.

On June 3, 1983, Lawrence Dragun, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) for review of the Secretary's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423.

On April 13, 1982, the plaintiff filed an application for disability benefits alleging that he had been disabled since May 2, 1980, as a result of head, back and neck injuries, blackouts and nervousness (R. 92–95), and benefits were denied on June 3, 1982 (R. 98–99). On July 21, 1982, the plaintiff requested reconsideration of this decision (R. 100) and upon reconsideration and in a decision dated September 15, 1982, benefits were again denied (R. 103–104). On October 21, 1982, the plaintiff requested a hearing (R. 105), and pursuant to that request a hearing was held on November

30, 1982 (R. 24–91). In a decision rendered on January 21, 1983, an Administrative Law Judge denied benefits (R. 9–18). On January 31, 1983 the plaintiff requested reconsideration of this determination (R. 8) and on April 27, 1983 the Appeals Council affirmed the prior determination (R. 4–5). The instant complaint was filed on June 3, 1983.

In reviewing an administrative determination of the Secretary, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Secretary that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Torres v. Schweiker*, 682 F.2d 109 (3d Cir.1982).

It is provided in 42 U.S.C. Section 405(g) that:

"The Court shall have power to enter upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..."

Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 [59 S.Ct. 206, 217, 83 L.Ed. 126] (1938)," *Richardson v. Perales, supra,* 402 U.S., at page 401, 91 S.Ct. at 1427; *Daring v. Heckler*, 727 F.2d 64 (3d Cir.1984).

At the hearing held on November 30, 1982 (R. 24–91), the plaintiff appeared with counsel (R. 26) and testified that he was born on November 5, 1923 (R. 34); that he graduated from high school and has a technical background (R. 34); that he did electrical maintenance work and crane repair work (R. 35, 59–63); that he was injured at work on May 2, 1980, when he was struck by a beam (R. 37–38) and that he is receiving Workmen's compensation benefits (R. 39).

In addition, the plaintiff testified that he experiences pain in the back of his head where he was struck and becomes light-headed about four times a week (R. 40–41, 80); that he does not care about anything and is unable to concentrate (R. 42); that he does not want to associate with anybody (R. 43); that he has some memory problems (R. 83–84) and that he takes medication (R. 41–42).

The plaintiff's wife testified that since the accident, the plaintiff is unable to perform household repairs (R. 85); that he has become short tempered (R. 85) and that sometimes he stays in his room when visitors come (R. 86).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Secretary that the plaintiff is not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

"an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding

sentence ... 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh", nevertheless, they must be followed by the courts. *NLRB v. Staiman Brothers*, 466 F.2d 564 (3d Cir.1972); *Choratch v. Finch*, 438 F.2d 342 (3d Cir.1971); *Woods v. Finch*, 428 F.2d 469 (3d Cir.1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Secretary that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose certain medical evidence was reviewed by the Secretary.

The plaintiff was treated at the St. Margaret Memorial Hospital emergency room on May 2, 1980 after a shelf hit him on the head (R. 141–142).

The plaintiff was treated at the St. Margaret Memorial Hospital emergency room on September 30, 1980 after he passed out (R. 143–145).

A CAT scan performed on January 16, 1981 was normal (R. 147).

The plaintiff was treated as an out patient at the Harmarville Rehabilitation Center between March 10, 1981 and July 28, 1981 (R. 149–160), when it was determined that as a result of the plaintiff's negative neurological tests and examination, he could return to work. In addition, there were no objective range of motion limitations.

The plaintiff's employer's insurance carrier terminated the plaintiff's Workmen's Compensation award on August 7, 1981 because the plaintiff was able to return to work (R. 109).

An EEG performed on May 20, 1981 was interpreted as within normal limits (R. 188).

The plaintiff was awarded a Veteran's disability pension from December 7, 1981 (R. 107).

On February 19, 1982, Dr. Allen E. Lebovitz certified that the plaintiff was unable to work because of depression (R. 161). Dr. Lebovitz specializes in psychiatry (R. 181).

In a report of a psychiatric evaluation on March 25, 1982 (R. 195–196), Dr. David L. Spence diagnosed post traumatic neurosis directly attributable to the plaintiff's May 2, 1980 accident. The plaintiff's overall mood was one of depression with associated agitation, and high anxiety level.

In a statement dated April 8, 1982 (R. 163–164), Dr. R.J. Bender noted that the plaintiff was unable to work due to headaches, dizziness and vertigo. Dr. Bender specializes in family practice (R. 178).

In a report covering the period from June 23, 1981 through May 14, 1982 (R. 173, 176), Dr. Lebovitz diagnosed depressive reaction, and concluded that the plaintiff was totally incapacitated.

In a report of an examination on May 17, 1982 (R. 170–172), Dr. Robert Baraff reported a normal neurological examination and diagnosed a cerebral concussion on May 2, 1980, vasovagal syncope, depression and chronic headaches. Dr. Baraff specializes in psychiatry and neurology (R. 179).

After reviewing the medical evidence, and in a report dated June 1, 1982, the Secretary concluded,

"Claimant has a history of head injury. At time of injury, skull x-ray, brain scan, electroencephalogram and back x-rays were normal. Neurological examination was normal. Claimant continues to complain of periodic blackouts and nervousness. Rehabilitation at local facility resulted in recommendation that claimant return to previous employment. Recent neurological examination revealed no ab-

normal findings. Claimant was alert and oriented. Mental status was normal. There was no aphasia, dysarthria or dementia. Claimant appeared to be minimally depressed. Daily activities, interests and ability to relate are not constricted. Claimant cares for his own needs. The severity of these impairments does not meet or equal a listing in the listing of impairments. Claimant retains the functional capacity for a limited range of light work. He can lift up to 20 lbs. and stand and walk up to 6 hours a day. He should avoid climbing and working at heights due to periodic dizzy spells. Claimant is 58 years old with 12 years of education and 31 years experience as an electrician maintenance man which is skilled heavy work with climbing required. This work has skills that would transfer to such light and sedentary jobs as electrician radio (Radio & TV), Electrical Repairman (Aircraft) and Control Panel Assembler (Mfg). Using vocational rule 202.07 as a framework, claimant is found to be not disabled and able to perform other than relevant past work." (R. 97).

On July 16, 1982, it was determined that the plaintiff's award of Workmen's Compensation benefits should continue (R. 190–194).

After reviewing the medical evidence, and in a report dated September 14, 1982, the Secretary concluded,

"The claimant suffered a cerebral concussion in 1980. Recent neurological exam was normal. Romberg is negative. Gait is normal. Mental status is within normal limits, although he is depressed. EEG is normal. He reports occasional loss of consciousness, but there are no physical findings to support this. There is no marked restriction of daily activities, constriction of interests, or seriously impaired ability to relate to other people. Range of motion is full in all joints. There is no evidence of an impairment that significantly restricts any work-related functions. The claim is denied on medical factors alone." (R. 102).

In a report dated November 5, 1982 (R. 182), Dr. Bender diagnosed depression, light headedness, and occipital pain. He concluded that the plaintiff is totally disabled.

In a report dated November 24, 1982, Dr. Lebovitz concluded,

"under treatment the quality of his life has improved, but his inability to work remains. I consider him to be totally disabled at this time. Efforts at rehabilitation would be counter productive." (R. 183).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Secretary must consider subjective symptoms. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir.1974). As the court stated in *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir.1971):

"Symptoms which are real to the claimant although unaccompanied by objective medical data may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof."

In *Good v. Weinberger,* 389 F.Supp. 350, 353 (W.D.Pa.1975), the Court stated:

"... *Bittel* seeks to help those claimants with cases that so often fall within the spirit—but not the letter—of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question."

On February 26, 1979, regulations became effective which require more explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§ 404.1501–1539, set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the

"Listings of Impairments" in Appendix 1 of the Regulations which the Secretary has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Secretary concluded that:

"In the opinion of the undersigned Administrative Law Judge although the claimant has been reinstated in Workmen's Compensation benefits and accordingly is reasonably deemed for such purposes to be incapable of returning to his job as a maintenance man involved in electrical and mechanical repair work around cranes and which involved heavy lifting and considerable climbing, and although Doctor Lebovitz, the claimant's treating Psychiatrist, and Doctor Bender, the claimant's treating Physician, concluded that the claimant is totally disabled, the totality of the available evidence is more reasonably supportive of the opinions and findings of Doctor Amayo whose staff conducted extensive evaluations of the claimant's physical, neurological, psychological and mental status impairments and the findings and opinions of Doctor Robert Baraff, a Board-Certified Neurologist and Psychiatrist and accordingly warrants a finding that the claimant for secondary gain purposes has been exaggerating the severity of his symptomatology and that within the framework of Section 404.1520(c) the claimant is neither suffering from a sufficiently severe physical, neurological or mental status impairment so as to be entitled to disability benefits under the Social Security Act. Although the claimant by virtue of his symptomatology does show evidence of a conversion hysteria reaction, in particular in relation to his fears of significant climbing and fear of falling off of a crane or cranes which he would be required to maintain and repair, the available medical evidence including electroencephalograms which repeatedly have been normal, normal brain scans and essentially normal x-ray studies is supportive of the conclusion of Doctor Amayo that the claimant is exaggerating his symptoms, for secondary gain purposes, and indeed the evaluation of another Board-Certified Neurologist and Psychiatrist, Dr. Baraff, that neurologically and mentally the claimant's conditions are essentially normal. Thus although the claimant has been complaining of dizzy spells and of chronic headaches and depression and of upper back and neck pains and has been reinstated in Workmen's Compensation benefits, the more reasonable evaluation of all the evidence even in the absence of a psychiatric report by Doctor Spence, for Social Security disability purposes warrants a finding within the framework of Section 404.1520(c) that the claimant is not suffering from a sufficiently severe physical, neurological or mental status impairment so as to significantly limit his physical or mental ability to do basic work activities, and accordingly for Social Security disability benefit purposes may not be found to be under a 'disability' at any time on or before the date of this

decision for any continuous period of not less than twelve months." (R. 15–16).

The medical evidence indicates that the plaintiff is suffering from some form of mental condition. His treating psychiatrist diagnosed the condition as depression and concluded that it was totally disabling, and that efforts at rehabilitation would be counter-productive. This evidence is largely uncontradicted in the record. Nevertheless, the Secretary concluded that the plaintiff was not disabled. While the Secretary is charged with resolving issues of credibility, she is not an expert. *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir.1983). Nor may the Secretary ignore uncontradicted evidence. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir.1982).

On the state of the record, doubt exists as to whether the Secretary's conclusion that the plaintiff is not disabled as a result of his mental condition is supported by substantial evidence. Accordingly, it is recommended that the defendant's motion for summary judgment be denied, without prejudice, and that the matter be remanded to the Secretary for further evaluation and consideration.