**Carmelo RIVERA**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services.**

**Civ. A. No. 83–2822.**

United States District Court, E.D. Pennsylvania.

Nov. 26, 1984.

Sol R. Gitman, Thomas F. McDevitt, Philadelphia, Pa., for plaintiff.

Edward S. G. Dennis, Jr., U.S. Atty., Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this Social Security action the claimant, Carmelo Rivera, appeals from a determination by the Administrative Law Judge (ALJ) denying his application for disability benefits. The parties filed cross-motions for summary judgment. United States Magistrate Peter B. Scuderi has issued a report with a recommendation that the claimant's motion for summary judgment be granted, the decision of the Secretary reversed, and the case remanded to the Secretary for a calculation of benefits. Commendably, given the record in this case, the Secretary has filed no objections to the Magistrate's Report and Recommendation. Because the Magistrate's report raised disturbing questions concerning the propriety of the ALJ's consideration of the evidence, this Court has undertaken a *de novo* review of the matter. For the reasons which follow, this Court agrees with Magistrate Scuderi that the claimant's motion for summary judgment must be granted and the decision of the Secretary reversed.

The claimant is a twenty-four year old man with a sixth grade education who was born in Puerto Rico and came to the United States in 1973. At the time of the hearing before the ALJ, the claimant was married with a seventeen month old child. The claimant does not speak English, and does not read or write fluently in Spanish. Prior to December of 1979 the claimant worked as a "hand-trucker", pushing carts of scrap metal, and previous to that employment he held various jobs as an unskilled laborer. In his application for disability benefits, the claimant alleges that he became disabled on or about December 12, 1979, due to a severe back condition. In a decision dated March 17, 1983, denying the claimant's application for disability benefits, the ALJ found that the claimant has lumbar disc disease and acute lumbar contusion; that the claimant's allegations of severe disabling pain are not credible; and that although the claimant is unable to return to his past relevant work as a hand-trucker, he can "perform work-related functions except for work involving heavy lifting and prolonged standing and walking with the avoidance of bending, pushing, and pulling" (i.e., the claimant can perform

sedentary work). The ALJ then applied the medical-vocational guidelines set forth in Appendix 2 of the regulations to the medical and vocational characteristics of the claimant and determined that the claimant is not disabled. The Appeals Council summarily affirmed the ALJ's decision. Because the ALJ's decision (relying in part on the opinion of a chiropractor) is not supported by substantial evidence, and because the ALJ impermissibly drew unfounded (indeed, astounding) inferences concerning the claimant's credibility from the facts in evidence, the decision of the Secretary will be reversed.

In reviewing final determinations by the Secretary after an administrative hearing, courts are bound by the Secretary's findings of fact if they are supported by "substantial evidence," that is, such evidence as a reasonable mind would accept to form a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Recently the Third Circuit again has summarized the legal analysis applicable in social security appeals:

> Disability determination proceedings before an ALJ involve shifting burdens of proof. The claimant bears the initial burden of proving that he or she is disabled. The claimant satisfies this burden by showing that he or she cannot return to his or her customary occupation. Once this burden is met, the burden shifts to the Secretary, who must prove that the claimant can still engage in substantial gainful activity. The Secretary satisfies this burden by showing that given claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy. *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979).

*Podedworny v. Harris*, 745 F.2d 210, at 216–217 (3d Cir.1984). In the present case, the claimant satisfied his initial burden by demonstrating his inability to return to his former occupation. The ALJ found that the claimant has the residual functional capacity to perform sedentary work. The validity of this finding depends upon whether the ALJ was justified in rejecting (1) the medical evidence presented as to the claimant's disability and pain; and (2) the testimony of the claimant as to his disability and pain. *Podedworny v. Harris*, at 217.

The claimant was injured on October 3, 1979, when a car fender fell four feet from an overhead conveyor belt and struck his lower back. He was treated as an outpatient at Jeanes Hospital without success for several weeks, and was admitted to Jeanes Hospital on October 15, 1979. At the time of his admission, claimant was unable to stand erect, and had severe lower back pain "with significant spasm of both lower lumbar and paralumbar musculature" (R. 128). The diagnosis was acute lumbar contusion. In addition, x-rays revealed intense sclerosis of the anterior inferior portion of the back on the right side, as well as end plate irregularity, osteophyte formation, and subchondral cyst formation at the L–2 and L–3 levels of the spine. These findings were diagnosed as discogenic disease with degeneration, which was believed to be unrelated to the claimant's work injury (R. 128–31). The claimant was treated with bed rest, physical therapy, and medication for pain, and discharged on October 19, 1979.

The claimant attempted to return to work but was unable to continue because of severe pain (R. 49). He was treated by a company physician without success and finally ceased working altogether in December of 1979, when he was laid off (R. 19).

The claimant apparently received intermittent, unsuccessful treatment for his back pain in 1980, including a back brace prescribed by a "workmens' compensation doctor" (R. 57). On December 29, 1980, claimant was examined by Dr. Krause, an orthopedic surgeon. Dr. Krause concluded that the October 1979 accident had caused a permanent and significant musculo-ligamentous sprain of the lumbo-sacral and left ilio sacral areas of the back, and that this condition would preclude the claimant from returning to his past work (R. 140). Fur-

thermore, Dr. Krause reported that a review of the x-rays indicated the presence of a "pathology" involving the claimant's second and third lumbar vertebrae, which pathology made the claimant's prognosis "much more grave" and "limits even more" any potential for future employment (R. 140).

In July of 1982 the claimant was hospitalized for sixteen days at Episcopal Hospital. The claimant had muscle spasms over the L-1 to L-4 region of the back and hamstring spasms. The bone scans showed osteomyelitus and disc space infection of the L-2, L-3, and L-4 vertebral bodies. The discharge diagnosis was probable tuberculosis of the spine. The claimant was started on several medications and fitted with a Knight brace "to prevent further degeneration and collapse of the spine" (R. 149). Dr. Kallish, claimant's orthopedic physician, reported that claimant would be unable to work for an undetermined period of time (R. 146).

The claimant continued to be treated for tuberculosis of the spine at Episcopal Hospital in 1982. X-rays taken in December of 1979 showed disc loss at the L-2, L-3, and L-4 levels, although there was no evidence of "destruction" associated with a tuberculosis etiology (R. 161). Dr. Bumgardner, an orthopedic surgeon in the hospital's clinic, reported on December 22, 1982 that the claimant was continuing to receive treatment for tuberculosis of the spine (R. 157). In addition, a report from a physician prepared on October 14, 1982 for the Commonwealth of Pennsylvania's Department of Public Welfare stated that the claimant has tuberculosis of the spine; that the claimant is taking a variety of medications, including Darvocet for pain, that the claimant cannot do even light work because he has "constant pain, sitting or standing"; and that the prognosis for any improvement was "poor" (R. 163).

In response to a set of written interrogatories propounded by the ALJ, Dr. Learner, a specialist in internal medicine, stated that in his opinion the record showed that the claimant has lumbar disc disease and acute lumbar contusion; that the claimant has chronic low back pain due to lumbar disc disease; and that the claimant would be unable to do any lifting, bending, standing, walking, pushing, or pulling (R. 152–56). Dr. Learner also stated that in his opinion, based on the record, the claimant does not have tuberculosis of the spine. Dr. Learner stated that despite the positive tuberculin test, the x-rays which showed no evidence of the destruction expected with a tuberculosis etiology, as well as the normal sedimentation rate and absence of biopsy, precluded a diagnosis of spinal tuberculosis (R. 169).

Finally, the record in this case includes a phone contact from Dr. Matura, who had treated the plaintiff intermittently for his back pain in 1981–82 until the plaintiff apparently became dissatisfied with his treatment and sought relief at Episcopal Hospital (R. 9). Dr. Matura reported that x-ray results were negative; that although "there may be muscle spasms" the claimant "has full range of motion in his spine and all extremities"; that x-rays showed no arthritic changes in the spine; and that the claimant "was capable of any kind of work" (R. 144).

Dr. Matura's findings are incredible in light of the otherwise unanimous medical opinions that the claimant has a severe back impairment involving degenerative disc disease, if not tuberculosis of the spine. The record showed that Dr. Matura was not listed in the A.M.A. Directory for 1982, and the ALJ stated in his report that Dr. Matura's qualifications were "unknown". As Magistrate Scuderi noted, "a thirty second perusal of the Philadelphia yellow pages" reveals that Dr. Matura is a chiropractor. Although 20 C.F.R. § 404.-1513(e)(3) provides that a claimant may provide information from non-medical practitioners such as naturopaths and chiropractors to "help [the administration] understand how claimant's impairment affect [claimant's] ability to work", the regulations clearly provide that medical evidence of a claimant's impairment may be received only from "medically acceptable sources"

including, *inter alia,* licensed physicians and osteopaths. Chiropractors are not listed among the "medically acceptable sources" set forth in 20 C.F.R. § 404.-1513(a). Although the record in this case does not support the conclusion suggested by the Magistrate that the ALJ intentionally mischaracterized the evidence, the record clearly supports this Court's determination that the ALJ erred in finding that the claimant in this case is not disabled.

■ It is clear that no substantial evidence exists upon which to base a finding of non-disability. The claimant's treating physician from Episcopal Hospital has stated that the claimant is suffering from tuberculosis of the spine and is unemployable for an indeterminate amount of time. The claimant's treating physician's opinion is entitled to substantial weight. *Wier v. Heckler,* 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981). The physician who examined the claimant at the request of the Commonwealth's Department of Public Welfare also concurred with this diagnosis. As the ALJ recognized, a finding of tuberculosis of the spine would, under the regulations, compel a finding of disability. Claimant's consulting orthopedist, Dr. Krause, while not privy to the subsequent test results conducted at Episcopal Hospital indicating tuberculosis of the spine, nevertheless recognized from the x-rays alone that the claimant had a significant "pathology" in the lumbar vertebrae which rendered the prognosis for claimant's future employment "grave".

■ As noted above, Dr. Learner, who responded to written interrogatories at the request of the ALJ, disputed the diagnosis of tuberculosis of the spine. Since Dr. Learner did not examine the claimant, and evaluated the claimant's subjective complaints only on the basis of the record placed before him, his opinion must be accorded less weight than if he had treated or examined the claimant. *Weir v. Heckler,* 734 F.2d at 963; *Cotter v. Harris,* 642 F.2d at 704. Thus, this Court has concluded that substantial evidence does not support

the ALJ's rejection of the claimant's physician's diagnosis of tuberculosis of the spine.

■ Even assuming that the tuberculosis of the spine diagnosis could be fairly disputed, the ALJ's finding that the claimant could do sedentary work is not supported by substantial evidence because of the ALJ's improper rejection of the claimant's allegations of disabling pain. In this Circuit it is well-established that pain in and of itself may be a disabling condition. *Taybron v. Harris,* 667 F.2d 412, 415 (3d Cir.1981); *Smith v. Harris,* 644 F.2d 985, 988 (3d Cir.1981). In fact, "even pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and is so intense as to be disabling will support a claim for disability benefits". *Taybron v. Harris,* 667 F.2d at 415 quoting *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir.1971). The Third Circuit recently has emphasized that "testimony of subjective pain and inability to perform light work should be accorded great weight, especially when it is supported by competent medical evidence." *Podedworny v. Harris,* at 217, citing *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). *See also Weir v. Heckler,* 734 F.2d at 961; *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981).

In the present case the claimant testified to severe pain at the hearing, and several times he asked permission to rise to alleviate the pain (R. 40, 44). He testified that he experiences constant, severe pain in his back which extends down his left leg; that he cannot walk any distance without pain; that he can do no lifting or bending; that he can sit still for only about five minutes without having to get up to alleviate the pain; and that he wears a backbrace and takes medication for the pain (R. 56–59). He also testified that he does not drive a car (R. 46); that he does not attend church, that he participates in no social activities, clubs, or hobbies; and that on a typical day he simply goes downstairs once a day and remains in the living room all day (R. 59). The medical evidence of record fully corroborates claimant's allegations of disa-

bling pain. Even Dr. Learner's report acknowledges that the claimant's chronic pain would preclude him from employment requiring any exertion at all.

The ALJ, however, was not convinced. He determined that the claimant's allegations of severe pain were not credible. This Court has determined that it is the ALJ's findings, and not the claimant's testimony, which must be rejected as incredible. First, the ALJ decided that the claimant's allegations of pain associated with walking were not credible because he used "no type of assistive device to ambulate" (R. 23). However, the ALJ also noted that the claimant was assisted in walking to the hearing room by his sister-in-law (R. 40). This Court cannot conclude that one who relies upon a person to assist him in walking is somehow less credible with respect to his complaints of pain than one who relies upon a cane or crutch.

Second, it appears that almost from the outset of the hearing, the ALJ was determined to discover trivial inconsistencies in the claimant's testimony from which to draw adverse inferences regarding credibility. For example, the ALJ proceeded to question the claimant closely regarding his automobile driver's license examination and his driving history (R. 44–47). Having elicited from the claimant that he once owned a car but no longer does, and that he no longer drives a car, the ALJ, as if on cross-examination, confronted the claimant with the claimant's application for disability insurance in which the claimant's translator had written "I can drive a car for short distances". (R. 111). When the claimant, understandably puzzled, inquired as to the relevance of these questions, the ALJ replied "It goes to the credibility of your testimony that you've given so far." (R. 46). Of course, a person who does not own a car and who generally does not drive because of back pain is not necessarily unable to drive a short distance if the need arose, and thus the claimant's testimony was not inconsistent with his application. More disturbing is the ALJ's inappropriate prosecutorial style and his attempt to draw adverse credibility inferences from trivial and irrelevant inconsistencies in the record.

■ Third, the ALJ decided that the claimant's discomfort could not be severe because it was "not such as to require extensive medication (Darvocet) or to have indicated that he could not concentrate on or participate in the hearing other than to get up periodically during the hearing." (R. 23). The claimant, in addition to other medications, takes 100 mg. of Darvocet four times daily for pain. While it is not certain what prescribed medication (and in what dosage) would persuade the ALJ that the claimant's allegations of severe pain are believable, it is clear that the ALJ's credibility inference here was impermissible because (1) it improperly was based upon his own medical expertise, *see Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir.1983), and (2) it was based upon "the roundly condemned 'sit and squirm' method of deciding disability cases." *Id.* Even the ALJ's "sit and squirm" analysis is inexplicable because in fact during the hearing the claimant requested permission to rise in order to alleviate his pain. (R. 40, 44).

Undaunted, the ALJ saved his best credibility finding for last. As noted above, at the time of the hearing (January 5, 1983) the claimant's child was seventeen months old. In a *tour de force* unequalled in this Court's experience reviewing social security appeals, the ALJ, on the record, counted back twenty-six months and stated that "[since] [i]t would be about October of '80 the child was conceived, I draw the conclusion he's having relationships with his wife at least in, up until October of '80." (R. 59). When the claimant's attorney agreed that "it wasn't a test tube baby", the ALJ stated "there's certain inferences I'm going to draw from that, there is some physical activity, you know." (R. 59–60). The ALJ repeated this conclusion in his findings: "the claimant has a seventeen month old son whose conception in October 1980 or thereabouts was within the claimant's physical capacity limit." (R. 9).

■ It is now well-settled in this Circuit that

Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity ... It is well established that sporadic or transitory activity does not disprove disability... [It is] error [to draw] an inference from sporadic activities to a lack of disabling pain...

*Smith v. Califano*, 637 F.2d at 971–72. This Court has no hesitancy in concluding that, as a matter of law, evidence that a claimant was "having relations with his wife" some two years prior to the disability hearing does not support an inference that his allegations of severe pain are not credible. Where, as here, "all evidence as to disabling pain is favorable to the plaintiff", and "since there is no factual basis upon which the ALJ could reject [claimant's testimony of disabling pain], his subjective complaints ... stand unrebutted." *Smith v. Califano*, 637 F.2d at 972, quoting *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975).

For all the reasons set forth above, the Court has determined that no substantial evidence exists to support the ALJ's finding that the claimant is not disabled. Disregarding the ALJ's improper consideration of the chiropractor's report and his unfounded inferences as to claimant's credibility, it is clear that the Secretary's decision cannot stand. Accordingly, this Court will, in its discretion, *Podedworny v. Harris*, at 221, reverse the decision of the Secretary and remand for a calculation of benefits beginning December 12, 1979. An order follows.

### ORDER

AND NOW, this 26th day of November, 1984, upon consideration of the Report and Recommendation of United States Magistrate Peter B. Scuderi, this Court having made a *de novo* determination of the matter pursuant to Local Rule 7(IV)(b), for the reasons set forth in this Court's Memorandum of November 26, 1984,

IT IS HEREBY ORDERED:

1. The Report and Recommendation of the Magistrate is APPROVED and ADOPTED as modified by this Court's Memorandum of November 26, 1984.

2. The motion of the defendant Secretary of Health and Human Services for summary judgment is DENIED.

3. The motion of the plaintiff, Carmelo Rivera, for summary judgment is GRANTED.

4. The decision of the Secretary of Health and Human Services is REVERSED, and judgment is ENTERED in favor of the plaintiff, Carmelo Rivera, and against the defendant Secretary of Health and Human Services.

5. This matter is REMANDED to the Secretary for a calculation of benefits beginning December 12, 1979.