**Luis Santos SOTO, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

**No. 85–1884.**

United States Court of Appeals, First Circuit.

Submitted May 8, 1986.

Decided July 1, 1986.

Aurelio Saliva Mattei, Ponce, P.R., on brief for plaintiff, appellant.

Etzion Brand, Office of Gen. Counsel, Social Sec. Div., Daniel F. Lopez Romo, U.S. Atty., Fidel A. Sevillano, Asst. U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

PER CURIAM.

Claimant Luis Santos Soto appeals from a judgment of the United States District Court for the District of Puerto Rico affirming a decision of the Secretary of Health and Human Services (the "Secretary") denying his application for disability benefits. We vacate the judgment of the district court and remand with instructions to remand the case to the Secretary.

Claimant applied for disability insurance benefits on July 23, 1981, alleging disability due to diabetes, high blood pressure, and coronary thrombosis. After the Secretary denied claimant's application and his request for reconsideration, claimant requested and was granted a hearing before an Administrative Law Judge ("ALJ"). At the hearing, the ALJ took the testimony of claimant and a vocational expert, and was alerted to the results of a psychological examination which suggested that claimant might be suffering from a mental impairment which would prevent him from resuming his previous employment as a lottery ticket vendor. Accordingly, the ALJ ordered the claimant to undergo a second psychological examination. After claimant had been examined for the second time, the ALJ denied claimant's application for benefits, finding that claimant's alleged impairments were not attended by clinical findings that met or equalled the severity requirements of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1985), and that plaintiff was capable of returning to his former job as a lottery ticket vendor, although not to earlier, more physically taxing jobs.[1]

The ALJ's decision became the final decision of the Secretary when the Appeals Council denied review on February 16, 1983. Claimant sought review of the Secretary's decision in the United States District Court for the District of Puerto Rico. On August 20, 1985, the district court found that the Secretary's decision was supported by substantial evidence. This appeal followed.

Claimant argues that the ALJ erred in finding that his mental impairments did not meet or equal the severity requirements of any of the listed conditions of 20 C.F.R. Part 404, Subpart P, Appendix 1 (1985), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a) (1985). Specifically, claimant contends, and we agree, that the ALJ erred in failing to consider the fact that both of the psychologists who exam-

---

1. Claimant, who was 56 at the time of his hearing, possesses a second grade education, and has been a construction laborer, carpenter's helper, and, most recently, a lottery ticket vendor.

ined him reported that claimant had an IQ level of 59 or less, which is a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B (1985).

Prior to the hearing, claimant was examined by a clinical psychologist, Dr. Hernandez Cuesta, who reported that claimant had an IQ of 57 on the verbal scale, 58 on the performance scale, and 55 on the total scale. Dr. Hernandez concluded that claimant "functioned at a slight mental deficient level," his abilities were "not much preserved," and that he was "not capable of handling his own funds, nor benefits, nor taking decisions in life."

At the close of the hearing, the ALJ ordered claimant to undergo a second psychological examination, which was conducted by Dr. Carlos Ramirez Cancel. Dr. Ramirez reported that the results of claimant's IQ tests were 50 in the verbal scale, 63 in the performance scale, and 54 in the total scale. In a "Supplemental Questionnaire as to Residual Capacity," Dr. Ramirez also reported, *inter alia*, that claimant's residual ability to comprehend and follow instructions and perform simple or repetitive tasks was fair, and that his residual ability to perform work requiring frequent contact with others or complex tasks on a sustained basis was poor. Dr. Ramirez concluded his report by writing,

> In summary Luis is a 56 years [sic] old man, presenting intellectual and cognitive limitations, functioning in a Moderate Mental Retardation Level, presenting psychotic traits, presenting perceptual and visual motor coordination limitations and presenting limitations in his social development. He is very limited in verbal comprehension, in understanding and following instructions, unable to perform calculations and unable to establish social interactions. From his performance in the Arithmetic subtest (WAIS) he seems unable to handle his funds. But this psychologist is under the impression that Luis [sic] performance in the session, in the interviews and in the testing, is not really representative of his real abilities. He reported he could not use

his left arm or hand but I noticed that he did used [sic] it when leaving the office and in other occasions to hold down a paper. His behavior and his responses were the ones usually seen in persons who want to appear in a worse condition than what they really are.

In his decision, the ALJ referred to Dr. Ramirez's conclusions, his own observations of the claimant, and the testimony of a vocational expert who stated that claimant could return to his former employment as a lottery ticket salesman "if he only knew how to read and write." The ALJ concluded, "[t]he evidence shows that claimant's impairments are not attended by clinical findings that meet or equal the severity requirements of any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4."

■ The Secretary's findings (in this case, the findings of the ALJ) as to any fact "are conclusive if supported by substantial evidence." *Burgos Lopez v. Secretary of Health and Human Services*, 747 F.2d 37, 39 (1st Cir.1984). The regulations make it clear that, in evaluating a claim of mental retardation, the Secretary is entitled to consider "daily activities and behavior" as well as clinical findings. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00B4 (1985). Thus, the Secretary does not have to accept IQ scores as conclusive if there is substantial evidence of record from which to infer their unreliability.

■ Our difficulty here, however, lies in the fact that the ALJ never indicated awareness that an IQ level of 59 or less was a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B (1985), even though both psychologists who examined claimant found that his total IQ level was below 59. Instead the ALJ simply stated that the claimant's impairments were not accompanied by clinical findings that met or equalled the severity requirements of any of the listed impairments. This could mean either that the ALJ overlooked the significance of the test scores or else, while recognizing their significance, discounted them as unworthy of credence

given Dr. Ramirez's stated doubts that claimant's test performance was "really representative of his true abilities." Although Dr. Ramirez concluded that claimant's "behavior and responses were the ones usually seen in people who want to appear in a worse condition than what they really are," he also described claimant as functioning "in a Moderate Mental Retardation Level", as presenting "psychotic traits", and as being otherwise very limited over a wide range of basic abilities. Furthermore, both Drs. Hernandez and Ramirez reported that claimant had difficulty making calculations, and the vocational expert expressed the view that claimant's ability to work as a lottery ticket vendor depended on his being able to read, write, and perform bookkeeping tasks.

We are ill-equipped to sort out a record that admits of conflicting interpretations. Accordingly, we believe the case must be remanded to the Secretary for reconsideration of his decision in light of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B (1985).[2] The Secretary may take additional evidence on remand, and is not obliged to accept the results of claimant's IQ tests if there is a substantial basis for believing that claimant was feigning the results. If the Secretary does reject the test results on this basis, however, he should state his reasons for doing so.

Claimant also argues on appeal that (1) the ALJ erred in not giving due consideration to his complaints of pain and dizziness, and certain medical findings that claimant was suffering from carpal tunnel syndrome and cerebral arteriosclerosis; and (2) his job as a lottery ticket vendor was not "substantial gainful activity" within the meaning of 42 U.S.C. § 423(d)(1)(A) (1982). *See also* 20 C.F.R. §§ 404.1571–.1576 (1985); *Dolbashian v. Secretary of Health and Human Services,* 688 F.2d 4 (1st Cir.1982). The first of these arguments is intertwined with claimant's argument regarding his mental capacity, and it is not clear from the

record whether claimant ever raised the second argument below. Both of these contentions may be rendered moot if the Secretary concludes on remand that claimant meets the listed impairments for mental retardation. In any case, we think it appropriate to leave claimant's remaining arguments to the Secretary on remand, to address as he sees fit.

*The judgment of the district court is vacated with instructions to remand the case to the Secretary for further proceedings consistent with this opinion.*

---

**2.** The Secretary may also wish to consider the applicability of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C (1985), which indicates that mental retardation may be manifested by

"IQ of 60 to 69 inclusive (see 12.00B4) and a physical or other mental impairment imposing additional and significant work-related limitation of function."