**Edwin M. PFEISTER, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

Civ. A. 85–2153.

United States District Court, W.D. Pennsylvania.

Nov. 10, 1987.

724

Robert N. Pierce, Jr., Pittsburgh, Pa., for plaintiff.

Amy Reynolds Hay, U.S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

COHILL, Chief Judge.

This case is before us on cross-motions for summary judgment. The complaint requests review of the determination of the defendant Secretary of Health and Human Services denying plaintiff Edwin M. Pfeister disability benefits. For the reasons set forth below, the decision of the defendant will be affirmed. We will deny the plaintiff's motion for summary judgment and grant the defendant's motion for summary judgment.

## I. BACKGROUND

The plaintiff, Edwin Pfeister, was born February 25, 1936. T.237. He completed high school through the ninth grade. *Id.* Prior to ceasing employment in 1978, plaintiff worked as a movie projectionist and janitor. *Id.* Plaintiff was last insured for disability purposes as of December 31, 1983.

Plaintiff originally filed an application for disability insurance benefits and Supplemental Security Income with the defendant on October 4, 1982, alleging disability since June 16, 1978, due to angina, silicosis,

diabetes, and a duodenal ulcer. On June 30, 1983, an Administrative Law Judge (ALJ) held that plaintiff was not entitled to benefits. The Appeals Council upheld the ALJ on October 27, 1983. Plaintiff did not further appeal or request a redetermination of the Secretary's final decision that he was not disabled on or before June 30, 1983, and that determination is not now before this court. 20 C.F.R. § 404.955, § 404.988; *Domozik v. Cohen*, 413 F.2d 5, 7–8 (3rd Cir.1969).

On November 1, 1983, plaintiff reapplied for disability insurance benefits and Supplemental Security Income under sections 216(i), 223, and 1614(a)(3) of the Social Security Act claiming severe angina pectoris, ulcers, and diabetes. 42 U.S.C. § 416(i), § 423, § 1382c(a)(3). An ALJ found plaintiff capable of continuing his janitorial duties and on May 23, 1985, rejected plaintiff's claim for benefits. This decision was affirmed by the Appeals Council on July 24, 1985. Plaintiff then appealed the Secretary's determination to this court.

On November 11, 1985, we granted the defendant's motion to remand for consideration of new mental impairment regulations established by the Social Security Disability Reform Act of 1984. The Appeals Council vacated its denial of benefits on January 31, 1986, and remanded the case to the ALJ. On May 29, 1986, the ALJ held a supplemental hearing and on October 29, 1986, rejected plaintiff's application for disability benefits. The Appeals Council affirmed the ALJ on March 19, 1987. On April 7, 1987, this court granted plaintiff's motion, pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, to reopen the ALJ's final determination that plaintiff is not disabled. 42 U.S.C. § 405(g), § 1383(c)(3). Thus, presently before this court is the ALJ's determination of October 29, 1986, that plaintiff has not been disabled since June 30, 1983.

## II. DISCUSSION

In order to receive disability insurance benefits or Supplemental Security Income, one must be adjudged disabled by the Secretary. 42 U.S.C. § 423(a)(1)(C), § 1382.

The Secretary will find a claimant disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A).

To assist in evaluating the alleged disability of a claimant, the Secretary has provided the ALJ with a multi-step sequential analysis. 20 C.F.R. § 404.1520(a), § 416.920(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520, § 416.920. If at any point in the review the ALJ determines that the claimant is or is not disabled, the inquiry must end. *Id.; Santise v. Schweiker*, 676 F.2d 925, 927 (3rd Cir.1982).

When reviewing a denial of disability benefits under the Social Security Act, we are concerned with two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's findings are supported by substantial evidence. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3rd Cir.1983). In his motion for summary judgment before this Court, plaintiff requests a reversal of the ALJ's determination that plaintiff is not disabled and alleges three grounds of error: (1) the ALJ improperly failed to consider the application of impairment listing 12.07, (2) the ALJ improperly disregarded certain I.Q. score evidence resulting in his failure to apply impairment listing 12.05(C), and (3) the ALJ's finding that plaintiff is capable of

performing gainful and substantial work is not supported by substantial evidence. The defendant contends that the ALJ's determination is supported by substantial evidence.

Plaintiff's first assignment of error involves the third step in the ALJ's sequential analysis. The ALJ must consider whether the applicant's alleged impairment equals or exceeds in severity the impairments listed at 20 C.F.R., pt. 404, subpt. P, app. 1. 20 C.F.R. § 404.1520a(c)(2), § 416.920a(c)(2). The Listings of Impairments describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a), § 416.925. If the ALJ determines that the applicant suffers from a listed impairment and that the requisite duration requirements are met, the applicant must automatically be found disabled without consideration of his age, education, and work experience. 20 C.F.R. § 404.1520(d), § 416.920(d).

Plaintiff argues that the ALJ failed to refer to Listing 12.07 of the Listing of Impairments in his decision and ignored its application to plaintiff's case. Listing 12.07 provides;

*Somatoform Disorders:* Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. The required level of severity for these disorders is met when the requirements in *both* A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A History of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

    a. Vision; or

    b. Speech; or

    c. Hearing; or

    d. Use of a limb; or

    e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia); or

    f. Sensation (e.g., diminished or heightened).

3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury.

B. Resulting in three of the following:

1. Marked restriction of daily activities

2. Marked difficulties in maintaining social functioning

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

20 C.F.R., pt. 404, subpt. P, app. 1.

Plaintiff argues that the facts underlying his application support a finding of condition 3 of part A and condition 1, 2, and 4 of part B, thus warranting a finding that he is disabled.

■ It is well established that an ALJ reviewing a claimant's request for disability insurance benefits should provide comprehensive and specific findings. *Baerga v. Richardson,* 500 F.2d 309, 312–13 (3rd Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). *See Cotter v. Harris,* 642 F.2d 700, 704–05 (3rd Cir.1981). Should the ALJ fail to set forth detailed findings as to the basis of his decision, the case must be remanded. *Smith v. Harris,* 644 F.2d 985, 989 (3rd Cir.1981). A district judge may not speculate on findings that the ALJ failed to make. *Id.* Contrary to plaintiff's position, however, these guidelines do not provide the basis for a remand of this case.

There are nine categories of mental disorders, comprising impairment listings 12.01–.09, upon which a finding of disability may be based. 20 C.F.R., pt. 404, subpt. P,

app. 1. In order for a listing to be applied, and consequently an automatic finding of disability to be made, it must be determined that both section A and section B of that listing are met. 20 C.F.R., pt. 404, subpt. P, app. 1, para. A (Listings 12.05(a)-(c) and 12.09 provide for different methods of impairment determination).

Section A of each mental disorder listing sets forth symptoms that are uniquely related to that mental disorder "to medically substantiate the presence of a mental disorder" and that must be present in order for that listing to apply. *Id.* "The purpose of including the criteria in [Section] B ... of the listings for mental disorders is to describe those functional limitations associated with mental disorders which are incompatable with the ability to work." *Id.* The four functional limitations in Section B of each of the listed mental disorders are identical for Listings 12.01–.04, .05(d), and 12.-06–.08. The only difference among the listed disorders is in the number of functional limitations that must be present in order for there to be a finding that the listing's Section B requirements are met. For example, Listing 12.02 relating to organic mental disorders requires a finding of two of the functional limitations in Section B while Listing 12.07 requires that three be present.

The psychiatric review forms attached to the ALJ's opinion in this case indicate that the ALJ reviewed the requirements for each listed mental impairment. For each of the listings, including Listing 12.07, a box is marked indicating that the ALJ found "No evidence of a sign or symptom CLUSTER or SYNDROME which appropriately fits with this diagnostic category." Thus, although the ALJ made no reference to this finding in his opinion, he did find that plaintiff presented no evidence of a somatoform disorder.

It is conceded that an argument could be made that the ALJ's finding that plaintiff demonstrated no symptoms of somatoform disorder is unsupportable. A somatic disorder is a "neurotic illness characterized by the presence of multiple somatic symptoms including those seen in classical conversion hysteria." *Merck's Manual of Medical Diagnosis* 1446 (1982). The essential features of somatic disorders are "physical symptoms suggesting physical disorder ... for which there are no demonstrable organic findings or known physiological mechanisms and for which there is positive evidence, or a strong presumption, that the symptoms are linked to psychological factors." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 241 (3rd ed. 1980). Plaintiff contends that the evidence of record warrants a finding that part three of Section A of Listing 12.07 is met; that there is medically documented evidence of plaintiff's unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury.

The record provides evidence that the plaintiff believes that he is disabled and that he constantly complains of physical problems even though there is no organic basis for such a belief. Plaintiff testified that he experiences daily chest and other bodily pains, T.203, 206, 216, 253, 262, depression, T.210, and nausea, T.207, and that he takes daily doses of Carafate, Isordil, Tagamet, Nitrobid, Ativan and Nitroglycerin, T.204, 205, 210, 240, 784, even though he has never been hospitalized for heart problems, T.223, and has never been diagnosed as having heart problems. T.225, 784. In an April, 1986, examination, Dr. Doo Cho, a psychiatrist, diagnosed plaintiff as having symptoms of somaticization disorder. T.798.

Although there is arguably some factual basis upon which a finding of part 3 of Section A may be made, the ALJ's failure to make that finding is harmless error. As noted, in addition to meeting the Section A requirements plaintiff had to meet the requirements of Section B which are identical for most of the other listed mental disorders. In finding that the Section A requirements of Listing 12.05(D), relating to mental retardation, and Listing 12.06, relating to anxiety related disorders, were met, the ALJ was required to consider the Section B functional limitations. The ALJ concluded that plaintiff did not satisfy the

severity levels of any of the functional limitations. Since the identical Section B analysis must be undertaken for the other listed impairments including Listing 12.07, the ALJ's findings, unless unsupported, make unnecessary a remand of this action to reconsider the applicability of Section A of Listing 12.07, or a finding by this court that it applies.

As we previously stated, an ALJ's factual findings are reviewed in terms of whether they are supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir.1983). This court finds that the ALJ's determinations that the requisite severity levels of the Section B functional limitations were not met are supported by substantial evidence.

■ Listing 12.07 provides that in order for that Listing to be applied, the specified degree of severity must be present for three out of the four functional limitations. The first functional limitation requires marked restrictions of activities of daily living. 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.07(B)(1). The ALJ found only slight restriction. T.14, 34. The plaintiff's testimony and the reports of treating physicians and psychologists indicate that the plaintiff actively maintains his household, shops for groceries, drives a car, walks his dog several times a day, reads, cooks, and attends church. T.21, 213–14, 236, 246, 255. This evidence reveals that plaintiff is capable of initiating and participating in activities independent of supervision. 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.00, para. (C)(1). Thus, we conclude that the ALJ's finding that plaintiff suffers only slight restrictions in daily activities is supported by substantial evidence.

■ The second functional limitation that may be present is marked difficulty in maintaining social functioning. 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.07(B)(2). The ALJ found only moderate difficulty. T.21–22, 34. The evidence demonstrated that although plaintiff gets along well with his family and small group of friends, T.244, he is nervous around strangers and prefers not to be out in public. T.211, 244. In his psychiatric assessment, Dr. Cho found plaintiff's ability to interact with the public to be adequate. T.801. There was, however, no evidence of a history of altercations, evictions, firings, or other anti-social incidents involving the plaintiff which would demonstrate his inability to interact and communicate effectively with others. 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.00, para. (C)(2). In fact, the ALJ found plaintiff to be "fairly articulate and polite, [showing] no signs of nervousness" during the course of the proceedings below. T.22. *See Torres v. Schweiker*, 682 F.2d 109, 112 (3rd Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983) (ALJ properly considered plaintiff's behavior at the hearing). Therefore, we conclude that the ALJ's finding that plaintiff suffers only moderate difficulty in social functioning is also supported by substantial evidence.

Although plaintiff does not take issue with respect to the ALJ's finding on the third functional limitation, we note that these findings are supported by substantial evidence as well. The ALJ found that plaintiff often had deficiencies of concentration and persistence in failing to complete tasks in a timely manner. T.22, 34. The third functional limitation requires at least frequent deficiencies. 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.07(B)(3). Although Dr. Rhodes, in a March, 1986, psychological evaluation of plaintiff, concluded that plaintiff would have trouble interacting with supervision, functioning independently and remembering and carrying out complex job instructions, he also reported that plaintiff's ability to maintain attention and concentration was fair. T.795. In April, 1986, Dr. Cho concluded that plaintiff would not have problems concentrating on tasks for which he was not under stress. T.803. Dr. Cho additionally found that plaintiff could follow simple instructions, perform scheduled activities, attend to tasks from start to finish and sustain a routine. T.802.

■ Finding that plaintiff experiences some deficiency in concentration and per-

sistence, the ALJ concluded that plaintiff is only moderately limited in his ability to carry out simple instructions and finish tasks on time provided that he is not subjected to inordinate amounts of stress. Since plaintiff is able to complete tasks of a basic nature, the ALJ justifiably concluded that plaintiff's deficiencies in concentration and persistence did not rise to the required severity level.

The final Section B functional limitation criteria requires a finding of repeated episodes of deterioration in work or work-like settings which cause the plaintiff to withdraw from that situation or to experience exacerbation of symptoms with an accompanying difficulty in maintaining activities of daily living, social relationships and maintaining concentration. 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.00, para. (C)(1). The ALJ found that the evidence of record revealed no information "suggesting that the claimant has deteriorated when faced with stressful circumstances." T.22. Our review of the record supports this conclusion.

Accordingly, we find no basis upon which to reverse the ALJ's Section B analysis. Since Listing 12.07 requires, in addition to meeting its Section A requirements, a finding of the required severity level for at least three of the four functional limitations in Section B, remanding this case for further review of the Section A requirements of Listing 12.07 is unnecessary. The Section B analysis of the ALJ, as a result of his finding that the Section A requirements of Listings 12.05(D) and 12.06 were met, is supported by substantial evidence and would not be altered by a finding that the Section A requirements of Listing 12.07 were met.

Plaintiff's second assignment of error also involves the third step in the ALJ's sequential analysis. As previously noted, the ALJ must consider whether the applicant's alleged impairment equals or exceeds in severity the impairments listed at 20 C.F.R., pt. 404, subpt. P, app. 1. 20 C.F.R. § 404.1520a(c)(2), § 416.920a(c)(2). Plaintiff argues that the evidence of record supports the application of Listing 12.05(C).

The ALJ found that the evidence needed to apply this listing was absent.

Listing 12.05(C) provides that when a claimant is determined to have a "valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function," he is sufficiently severely mentally retarded to be deemed disabled without an inquiry into the Section B functional limitations. 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.05(C).

Plaintiff contends that the October 23, 1984, report of Dr. Noel Plummer, a clinical psychologist, establishes that plaintiff has a verbal I.Q. score of 68 which is within the range of severity of Listing 12.05(C). The ALJ rejected Dr. Plummer's finding. Plaintiff argues that the ALJ did not provide a sufficient explanation for doing so. The portion of the ALJ's opinion addressing this issue is as follows;

> With respect to the question of the claimant's borderline intellectual functioning, the administrative law judge notes that while one psychologist (Dr. Plummer) noted an intelligence score of 68, that particular score is not consistent with the claimant's generally perceived capacity and is in conflict with the information provided by both a consulting psychiatrist as well as Dr. Rhoades, a psychologist who examined and tested the claimant as recently as March, 1986. The claimant has worked for many years as a custodian, and in the remote past also worked as a movie projectionist despite any intellectual limitations. It is further noted that both Dr. Cho, a psychiatrist, and Dr. Gress have indicated that the claimant has either average intelligence, or is in the dull normal to mildly mentally retarded range. The totality of the evidence fails to suggest that a true test of claimant's intelligence would produce a score below 70. T.20–21.

■ We find that the ALJ's decision to reject the I.Q. test results provided by Dr. Plummer is supported by substantial evidence and is sufficiently explained in his opinion.

An ALJ may disregard I.Q. scores as unreliable if there is substantial evidence supporting such a conclusion. *Soto v. Secretary of Health and Human Services,* 795 F.2d 219, 222 (1st Cir.1986). Here, the ALJ was presented with two reported I.Q. scores. Dr. Plummer's report of October 23, 1984, found that plaintiff had a verbal I.Q. of 68, a performance I.Q. of 81, and a full scale I.Q. of 74. T.777. Dr. Kenneth Rhodes' report of March 10, 1986, found that plaintiff had a verbal I.Q. of 75, a performance I.Q. of 92 and a full scale I.Q. of 82, placing him in the low average intelligence range. T.788. The verbal I.Q. score reported by Dr. Plummer is the only score which would provide plaintiff with a disability determination under Listing 12.-05(C).

The mere existence of conflicting evidence does not require a remand when disability benefits are denied; conflicts in testimony are to be resolved by the Secretary and not this court. *Wolfe v. Califano,* 468 F.Supp. 1018, 1022 (W.D.Pa.1979); *Green v. Schweiker,* 694 F.2d 108, 111 (5th Cir.1982), *cert. denied,* 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 357 (1983). In light of the conflicting verbal I.Q. scores, the ALJ was required to determine which more accurately reflected plaintiff's mental capabilities. The ALJ concluded that Dr. Plummers's report was not consistent with the plaintiff's "generally perceived capacity" as demonstrated by other credible evidence.

Though not reported in quantitative terms, Dr. Cho, a psychiatrist, found plaintiff to be in the mild to dull normal range of mental retardation. T.799. Dr. Gordon Gress found plaintiff to be of average intelligence. T.824. In light of these reports, the ALJ's first hand exposure to plaintiff, and the lack of evidence supporting Dr. Plummer's reported lower I.Q. score, we must find that the ALJ's decision to accept Dr. Rhodes's verbal I.Q. evaluation is supported by substantial evidence. The ALJ carried out his duty to indicate his reasons for accepting and rejecting the evidence presented. *Cotter,* 642 F.2d at 705.

Therefore, we conclude that the ALJ justifiably determined that plaintiff's true verbal I.Q. score was not below 70, the required level of severity for an automatic determination of disability under Listing 12.05(C) was not present.

Plaintiff's third allegation of error involves the last step in the sequential analysis. In the final two stages, the ALJ must determine whether plaintiff's impairments prevented him from performing his past relevant work, 20 C.F.R. § 404.1520(e), § 416.920(e), and if so, whether the plaintiff could perform any other work which exists in the national economy in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520(f), § 416.920(f). The ALJ found that plaintiff is unable to perform his past relevant work as a janitor and neither party takes issue with that finding. The ALJ additionally found that plaintiff can perform a significant number of jobs in the national economy. Plaintiff argues that this finding is not supported.

■ With respect to plaintiff's residual functional capacity, the ALJ concluded that plaintiff has the "physical exertion and nonexertional requirements [for] work except for strenuous physical exertion above the light and medium levels, significantly stressful situations, close interaction with others, the performance of complex and varied job tasks, and casual supervision." T.24. We hold that this finding is supported by substantial evidence.

Although plaintiff's treating physicians opined that plaintiff is incapable of being gainfully employed, these opinions are not consistent with objective medical evidence in the record. In a physical capacity evaluation dated June 6, 1984, Dr. Cassidy reported that plaintiff could not sit, lift, bend, squat or perform other similar physical movements. T.774–75. Dr. Cassidy also summarily concluded, without further explanation, that because of plaintiff's "mental condition, cardiac neurosis, and limited capacity I feel that he is totally and permanently incapacitated from public employment." T.775. The ALJ gave this report no weight because Dr. Cassidy provided no clinical findings to support his functional assessment. T.15. The evidence also re-

veals that subsequent physical examinations by other physicians disclosed no physical limitations. T.781, 784–85, 824. In fact, evidence of record clearly demonstrates that plaintiff is not severely limited in physical movement. Although plaintiff testified that he has trouble walking and lifting more than 25 pounds, T.213, 239, he regularly does housework, cooks, walks his dog, goes shopping, goes to church, and drives a car. T.213–14, 236, 246, 255. In light of Plaintiff's activities and Dr. Cassidy's failure to support his conclusion that plaintiff's mental condition prevented him from working, the ALJ properly disregarded Dr. Cassidy's opinion.

In his reports of June 23, 1986, and October 7, 1986, Dr. Gress concluded that plaintiff was not gainfully employable. T.824, 833. In neither report did he cite the presence of physical problems, he just noted that plaintiff had chronic recurrent anxiety neurosis and moderately severe somaticization with respect to his cardio-pulmonary system. T.824. The ALJ decided to give these reports little weight because an April 17, 1985, report from Dr. Gress similarly found no symptoms of any organic disease, only anxiety neurosis, and at that time did not find plaintiff disabled. The ALJ found Dr. Gress's subsequent determinations of disability to be of little credibility in that Dr. Gress provided no clinical findings demonstrating that plaintiff's condition had deteriorated since his earlier examinations. T.17. The ALJ added that since Dr. Gress was not a psychiatrist, his opinions regarding plaintiff's mental state were of little value. *Id.* We find that the ALJ's rejection of Dr. Gress's unsubstantiated findings was proper.

A similar conclusion must be reached as to the ALJ's rejection of the conclusion of Dr. Raymond Scanlan, plaintiff's chiropractor, that plaintiff is disabled. In a four line note written June 25, 1984, Dr. Scanlan asserted that he was treating plaintiff for chronic disability of the lumbar spine and that plaintiff "remains disabled from all types of labor at this time." T.783. The ALJ properly gave this report no weight in that there were no clinical

findings suggesting significant orthopedic limitations. T.16. Furthermore, a chiropractor's report is not a medically acceptable source of an individual's impairment. 20 C.F.R. § 404.1513 (1987); *Rivera v. Heckler,* 598 F.Supp. 203, 207 (E.D.Pa. 1984).

There is substantial evidence of record supporting the ALJ's conclusion that plaintiff is capable of some form of employment, although not without limitation. First, it must be noted that plaintiff suffers no organic disease and has never been hospitalized for cardio-vascular problems. T.221–22, 784–85. Although the evidence supports the ALJ's finding that plaintiff does have a moderately severe anxiety disorder with a cardiac neurosis and diminished intellectual functioning, T.777–78, 784–85, 788, 799, 824, the evidence also demonstrates that this does not preclude plaintiff from engaging in some, albeit limited, form of light to medium work.

Dr. Cho, a psychologist, found that plaintiff could perform work in which no stress was involved, could perform on a schedule, and could attend to a task from beginning to end. T.801–03. He also noted that plaintiff's ability to work in public was adequate. T.803. Dr. Rhodes, also a psychologist, found that plaintiff could carry out simple instructions and follow work rules but would be poor with respect to functioning independently, would require maximum supervision and would find it difficult to participate in a competitive employment market. T.794–6.

Clinical psychologist Dr. Plummer found that due to plaintiff's deficiencies in verbal and intellectual skills, plaintiff could not perform work involving abstract thinking or interaction with other people. T.778. Although Dr. Plummer added that plaintiff's limited motor skills could restrict his functioning in jobs using his hands, T.778, such limitation appears minimal in light of the results of an adapted Gestalt test performed on plaintiff by Dr. Rhodes. Plaintiff completed the test in a manner that was reported as being 98 percent perfect suggesting plaintiff's ability to maintain good pencil pressures and copy simple or

complex patterns with accuracy in addition to having good hand-eye coordination. T.789.

Finally, the ALJ took note of plaintiff's apparent obsession with obtaining compensation for his disability. T.20. Dr. Frank Chianese opined that plaintiff's symptomatology is a natural evolution of a disability syndrome, "the more his disability is suspect, the more intense his symptoms become." T.781. Dr. Chianese added "This doesn't mean plaintiff's symptoms are consciously fabricated but are a result of the patient's constant concern with his ill health and his right to compensation." *Id.* Subjective complaints of pain alone may be disabling but must be supported by evidence of medical impairments which could reasonably be expected to produce such pain. 42 U.S.C. § 423(d)(5)(A); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

This evidence of record provides substantial evidence supporting the ALJ's finding that plaintiff's residual functional capacity permits him to undertake light to medium work which does not involve significant stress, close interaction with others and the performance of complex and varied job tasks.

Finding that plaintiff's exertional capacity to engage in work was diminished to some extent by his nonexertional limitations, specifically plaintiff's limited intellectual functioning and anxiety problems, the ALJ properly concluded that the medical-vocational grid was not fully applicable to plaintiff's situation. 20 C.F.R., pt. 404, subpt. P, app. 2, § 200.00(e); *Santise v. Schweiker*, 676 F.2d 925, 934-35 (3rd Cir. 1982). Thus, the grid could only have provided a framework of analysis to be considered in connection with an independent analysis of plaintiff's nonexertional impairments. 20 C.F.R., pt. 404, subpt. P, app. 2, § 200.00(e)(2); *Burnam v. Schweiker*, 682 F.2d 456, 57-58 (3rd Cir.1982).

The ALJ accordingly proceeded to use the grid as a guide. Since plaintiff was 50 years old at the time of the ALJ's decision, plaintiff was defined as a person approaching advanced age. 20 C.F.R. § 404.1563(c), § 416.963(c). Since plaintiff has a ninth grade education he fell in the limited education educational level. 20 C.F.R. § 404.1564(b)(3), § 416.964(b)(3). Additionally, plaintiff's limited work background places him at the skilled work—not transferable skill level. 20 C.F.R. § 404.1568, § 416.968. Applying these factors, rules 202.10 or 203.18 in Tables 2 and 3 of 20 C.F.R., pt. 404, subpt. P, app. 2, suggest a finding of "not disabled."

In addition, the ALJ obtained the assistance of a vocational expert to determine the vocational impact of plaintiff's nonexertional limitations. 20 C.F.R. § 404.1566(e). The hypothetical given to the expert was an accurate representation of plaintiff's situation as developed in the record:

> Assume that the claimant is a 50 year old individual with a 9th grade education and past work experience as a janitor. Assume further that he has a history of chest pain since about 1979, with cardiac complaints that would prevent very strenuous exertion but would allow him to perform light and/or medium exertional job tasks. Assume further that the claimant has a life-long history of nervousness and *cannot* perform work in circumstances involving significant stress, close interaction with others, complex and varied job tasks, and casual supervision. Assume also that based on recent psychological and psychiatric examinations the claimant has average to low average intellectual functioning. T.826 (emphasis in original).

In his report of September 12, 1986, vocational expert Eugene Hoffman responded to the ALJ's request concluding that occupations exist in significant numbers in the regional market in which plaintiff resides, as well as the national economy, for which the plaintiff would be suitable. T.827. He cited the following examples: a sorter and folder, a packager, housekeeping, simple assembly work, and a stocker in a stockroom. *Id.* Mr. Hoffman added that these jobs do not require plaintiff to undertake additional training or education and would involve only a short one or two week break-in period. *Id.*

We conclude that based on the ALJ's residual functional capacity assessment, the "not disabled" guideline from the grid, and the vocational expert, the ALJ's determination that plaintiff is capable of performing gainful and substantial work within the economy is supported by substantial evidence. Accordingly, plaintiff cannot be considered disabled for purposes of disability insurance benefits or Supplemental Security Income. 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A).

Accordingly, we will deny plaintiff's motion for summary judgment and grant the defendant's motion for summary judgment.

An appropriate order will issue.